**UNITED STATES DISTRICT COURT FOR**

**THE EASTERN**

**DISTRICT OF MISSOURI**

James- Mertens et al.,

*Enfranchised Living Souls,*

 Claimant(s)

*REQUEST FOR*

*TRIAL BY JURY,*

*MULTI- DISTRICT*

*LITIGATION (M.D.L.),*

*AND*

*18 U.S.C. § 1514 (B),*

*FOR*

*VIOLATIONS OF 18 U.S.C. § 1962.*

James- Mertens

*An Enfranchised Living Soul,*

49497 Highway 49

Annapolis MO. 63620,

573-604-3544,

jwm1131@gmail.com

and

Michelle- Marryann: Dickerson

Landmark R.I.C.O. Claim, Pg. 1 of 138

*An Enfranchised Living Soul,*

8589 Bowden St.

Douglasville, Georgia 30134,

 (314) 417-6527,

michelled738@gmail.com

and

Alexandra- Marie: Dean,

*An Enfranchised Living Soul,*

4573 JONATHAN ST

HASTINGS, FL, 32145,

(314) 323- 8267,

conscioussparrow1719@gmail.com,

and

Brooke- J:  Marr,

*An Enfranchised Living Soul,*

3540 Lucy Ave.

St. Louis MO, 63116,

(314) 224-1882,

Brookesigala@gmail.com

and

Whitney- Thompson

*An Enfranchised Living Soul,*

19 MARYMOUNT CT.

 VALLEY PARK, MO 63088,

(636) 655-9230,

redford175@gmail.com

and

Ariel- Alton,

*An Enfranchised Living Soul,*

1227 N Florissant Rd.

Saint Louis MO. 63135,

(314) 459- 3462,

alton.ariel@yahoo.com

and

Justin- E: Shire,

*An Enfranchised Living Soul,*

2392 Derby Road

Birmingham MI. 48009,

(249) 730- 6202,

justin.shire@gmail.com

and

Ryan- Nicolas: Brown,

*An Enfranchised Living Soul,*

201 Turtle Dr.

Fenton MO. 63026 Apt 101,

(314) 200- 2938,

emailaddressforsale@gmail.com

vs.

Joe Biden et al.,

(An Individual)

1) HEALTH AND HUMAN SERVICES OF THE UNITED STATES (A Federal Agency),
   [x8]

2) ADMINISTRATIVE OFFICE OF THE COURTS (A Municipal Entity),  [x8]

3) DOMESTIC RELATIONS OF SAINT LOUIS COUNTY (A Municipal Entity), [x3]

4) COUNTY OF SAINT LOUIS CORPORATION (A Municipal Entity),  [x8]

5) CITY OF SAINT LOUIS CORPORATION (A Municipal Entity),  [x8]

6) THE SUPREME COURT OF MISSOURI (A Municipal Entity), [x8]

7) CIRCUIT COURT OF SAINT COUNTY (A Municipal Entity), [x8]

8) THE MISSOURI EASTERN COURT OF APPEALS (A Municipal Entity), [x3]

9) SAINT LOUIS COUNTY BAR (A Missouri Corporation), [x8]

10) COUNTY CLERK OF COURT OPERATIONS (Corporation),  [x8]

11) HOMELAND SECURITY OF SAINT LOUIS (A Municipal Entity), [x8]

12) FEDERAL BUREAU OF INVESTIGATION OF SAINT LOUIS (A Municipal Entity),
    [x8]

13) SAINT LOUIS FEDERAL COURT LEGAL ADVICE CLINIC (A Municipal Entity),
    [x2]

14) INTERNAL AFFAIRS DIVISION (A Municipal Entity), [x8]

15) THE MISSOURI ATTORNEY GENERAL'S OFFICE (A Municipal Entity), [x8]

16) THE SAINT LOUIS CITY SHERIFF'S DEPARTMENT (A Municipal Entity),

17) THE SAINT LOUIS CITY POLICE DEPARTMENT (A Municipal Entity), [x2]

18) THE SAINT LOUIS COUNTY POLICE DEPARTMENT (A Municipal Entity, [x2]

19) THE CRISIS INTERVENTION TEAM OF SAINT LOUIS CITY (A Municipal Entity)

   [x2]

20) THE CRAWFORD COUNTY POLICE DEPARTMENT (A Municipal Entity),

21) THE FRANKLIN COUNTY POLICE DEPARTMENT (A Municipal Entity),

22) THE JEFFERSON COUNTY SHERIFF'S DEPARTMENT (A Municipal Entity),

23) THE BALLWIN POLICE DEPARTMENT (A Municipal Entity), [x2]

24) THE RICHMOND HEIGHTS POLICE DEPARTMENT (A Municipal Entity),

25) THE SULLIVAN POLICE DEPARTMENT (A Municipal Entity),

26) BARNES- JEWISH HOSPITAL OF SAINT LOUIS (A Private Institution), [x2]

27) MERCY HOSPITAL SOUTH (A Private Institution),

28) THE DEPARTMENT OF SOCIAL SERVICES (A Municipal Entity), [x8]

29) THE MISSOURI DEPARTMENT OF SOCIAL SERVICES (A Municipal Entity), [x3]

30) D.C.F.S. CRAWFORD COUNTY (A Municipal Entity),

31) D.C.F.S. SAINT LOUIS (A Municipal Entity),

32) Joe Biden (An Individual), [x8]

33) Mary R. Russell (An Individual), [x8]

34) Betsy Ledgerwood (An Individual),

35) Michael L. Parson (An Individual), [x8]

36) Matthew T. Schelp (An Individual), [x8]

37) Sarah E. Pitlyk (An Individual),

38)  John R. Lasater (An Individual), [x2]

39) Nicole S. Zellweger (An Individual),

40)  Robert M. Heggie (An Individual), [x2]

41) Mary E. Ott (An Individual),

42) Mary W. Greaves (An Individual), [x2]

43) Joseph L. Green (An Individual), [x2]

44) Megan Julian Higgins (An Individual),

45) Scott Bernstein (An Individual),

46) Patricia Ann Riehl  (An Individual),

47) Joan M. Gilmer (An Individual), [x8]

48) Laura Roy (An Individual), [x3]

49) Kurt S. Odenwald (An Individual),

50) Michael E. Gardner (An Individual),

51) Renee Hardin- Tammons (An Individual),

52) Neil Hogan (An Individual),

53) George Allen Crouch (An Individual),

54) Sargent Simon (An Individual),

55) McClure (An Individual),

56) Darnell M. Willis (An Individual),

57) Edward Miles (An Individual),

58) Daymond Wayne Lynn (An Individual),

59) Megan Anne Rodgers (An Individual),

60) Shamantha Edwards (An Individual),

61) Brewer (An Individual),

62) Adam Carnal (An Individual),

63) Hecox (An Individual),

64) Eric Willbanks (An Individual),

65) Lunyou (An Individual),

66) McKinney (An Individual),

67) Smith (An Individual),

68) Brooks (An Individual),

69) Sargent Schilli (An Individual),

70) Corporal Scharfenberg (An Individual),

71) Jorden Berti (An Individual),

72) Kelly Landre- Wright (An Individual),

73) Olainki Spraggins (An Individual), [x2]

74) Gina Dean (An Individual)

75) Duwain Dean (An Individual),

76) Brian Wach (An Individual),

77) Justin Wach (An Individual),

78) Betty Jene Hansmann (An Individual),

79) William Gregory (An Individual),

80) Gabby Olejnik (An Individual),

81) Cortnie Hulett (An Individual),

82) Troy Korte (An Individual),

83) Beth Lewandowski (An Individual),

84) Jacqueline Matreci (An Individual),

85) Laura Stobie (An Individual), [x6]

86) Sarah Melz (An Individual),

87) Jacquelyn Gonz (An Individual),

88) Kelly Chevalier (An Individual), [x4]

89) James N. Fendelman (An Individual), [x4]

90) Kimberly D. Whittle (An Individual),

91) Henry Miller, Jr. (An Individual),

92) Sarah Pleban (An Individual), [x2]

93) Elaine Pudlowski (An Individual),

94) Colleen Hubble (An Individual), [x2]

95) Arthur Nissenbaum (An Individual),

96) Jennifer Piper (An Individual),

97) Robert N. Hamilton (An Individual),

98) Holly Hamilton (An Individual),

99) John Fenley (An Individual),

100)    Dr. Christopher Parks (An Individual),

101)    Dr. Mina Charepoo (An Individual),

102)    Dr. Lebowitz (An Individual),

103)    Dr. Susan Sanderson (An Individual),

104)    Jodie Hodge (An Individual),

105)    Every Child's Hope (A Private Institution),

106)   Bringing Families Together (A Private Institution),

107)   Good Shepherd (A Private Institution),

108)   Averhealth (A Private Institution),

109)   Robinwood Elementary (A Municipal Entity),

110)   Tina Nugent (An Individual),

111)   Lutricia Allen (An Individual),

112)   Bill Grant (An Individual),

113)   Crista Beracha (An Individual),

114)   Jennifer Hoffman (An Individual),

115)   Bridgett Kastner (An Individual),

116)   Teresa Langford (An Individual),

117)   Patricia Seidel (An Individual),

118)   Tiffany Hytrek (An Individual),

119)   Ann Pendegrass (An Individual),

120)   Colby T. Newborn (An Individual),

121)   Armand Wilson (An Individual),

122)   Briana Williams (An Individual),

123)   Brenton Williams (An Individual),

124)   Jamie Lynn Emahiser (An Individual),

125)   Ryley Hamilton (An Individual),

126)   Mayra Flesner (An Individual),

127)   Ericka Wentzel (An Individual),

128)   Alejandro Sigala (An Individual),

129)  Alicia Sigala (An Individual),

130)  George Edward Tillman (An Individual),

131)  Kimberly Jean Coleman (An Individual),

132)  Matthew Edwin Lee Voorhees (An Individual), [x2]

133)  Elliott I. Goldberger (An Individual),

134)  Patrick W. Pedano (An Individual),

135)  Elizabeth Middleton Sheehan (An Individual),

136)   Shirley R. Tasker (An Individual),

137)  Shelby C. Shire (An Individual),

138)  Jillian Brown (An Individual),

139)  Joseph S. Sanchez (An Individual),

140)  Deborah C. Moron Henry (An Individual).

141)  Carol Love (An Individual),

142)  Jeff Millar (An Individual),

143)   Sandra Faragut Hemphil (An Individual),

144)  John Thomas Nanny (An Individual),

145)  John Borbonus (An Individual),

146)  Jason D. Dodson (An Individual), [x6]

147)  Alicia Carter (An Individual),

148)  John Tressler (An Individual),

149)  Marshall Hoekel (An Individual),

150)  Evita Tolu (An Individual),

151)   Anna Elizabeth Connely (An Individual),

152)    Sioban Akers (An Individual),

153)    Mathew H. Noce (An Individual),

154)    Dale W. Hood (An Individual),

155)    Mark W. Haefner (An Individual),

156)    Cara C. Keeble (An Individual),

157)    Andrew Pichler (An Individual),

158)    Charles B. Flynn (An Individual),

159)    Kenyatta Eleby (An Individual),

160)    Ashley Janel Moore (An Individual),

161)    Rachna Lien Attorney (An Individual),

162)    Jesus Alejandro Martinez Reyes (An Individual),

163)    Lance Christian Bretsnyder (An Individual),

164)    Michelle Hammond (An Individual),

165)    Rick L. Nelson (An Individual),

166)    Chimene Yavonne Laskey (An Individual),

167)    John R. Bird (An Individual),

168)    Diane Monahan (An Individual),

169)    Carl Seltzer (An Individual),

170)    Tiffany Ann Hytrek (An Individual),

171)    Linda Colburn (An Individual),

172)    Alinda Dickerson (An Individual),

173)    Michael Dickerson (An Individual),

174)    Cynthia Newborn (An Individual),

175)    Joanne Wilson (An Individual),

176)    Armand Wilson (An Individual),

177)    Erica Jenkins (An Individual),

178)    Hannah Weis (An Individual),

179)    Kerry Allen (An Individual),

180)    Crista Beracha (An Individual),

181)    Marshall Hoekel (An Individual),

182)    Leigh Carson (An Individual),

183)    Arthur H. Nissenbaum (An Individual),

184)    Justin Ruth (An Individual),

185)    Jennifer Piper (An Individual),

186)    Sharon Remis (An Individual),

187)    Rachna Lien (An Individual),

188)    Deborah Roeder (An Individual),

189)    Maia Brodie (An Individual),

190)    David S. Betz (An Individual),

191)    Amy Diemer (An Individual),

192)    Shevon Harris (An Individual),

193)    Mark Kiesewetter (An Individual),

194)    Greg Brough (An Individual),

195)    Deborah Roeder (An Individual),

196)    Venus Jackson (An Individual),

197)    Lisa Sigmund (An Individual),

198) Lynn Reichert (An Individual),

199) Mary Davidson (An Individual),

200) Cynthia Albin (An Individual),

201) Sylvia Pociask (An Individual),

202) Molly Murphy (An Individual),

203) Julia Pusateri Lasater (An Individual),

204) Jeffrey Paul Medler (An Individual),

205) Matthew Hill Hearne (An Individual),

206) Bruce F. Hilton (An Individual),

207) Amanda Bundren McNelley (An Individual),

208) Krista S. Peyton (An Individual),

209) Frank Ross Gipson (An Individual),

210) Henry Edward Autrey (An Individual),

211) Stephen R. Clark (An Individual),

212) Rodney W. Sippel (An Individual),

213) John M. Bodenhausen (An Individual),

214) Charlie Thompson (An Individual),

215) Brittany Erker (An Individual),

216) Jenna Conley (An Individual),

217) Betty Thompson (An Individual),

218) Bradley R. Bodeux (An Individual),

219) Chad Rackers (An Individual),

220) Sanda Smajlovic-Gunn (An Individual),

221) Van Buskirk (An Individual),

222) Jenna Rohr Conley (An Individual),

223) Myra Leary  (An Individual),

224) Adam Coonce  (An Individual),

225) Kenzie Mooty  (An Individual),

226) Kelly Ploesser (An Individual),

227) Emily Mathews (An Individual),

228) Michael Burgoyne (An Individual),

229) Nathan S. Cohen (An Individual),

230) James D. Reid (An Individual),

231) Family Forward (Nonprofit Organization),

232) Mercy South (A Corporation),

233) Olive Street Pharmacy (A Corporation),

234) Holon Inclusive Health System (A Corporation),

235) WebWatcher by Awareness Technologies (A Corporation),

236) WebWatcher (A Corporation),

237) Nicole Mertens Senn (An Individual),

238) Jessica Whelan Giddens (An Individual),

239) Devon Nicole Votaw (An Individual),

240) David Redmond Crosby (An Individual),

241) Brenton Williams (An Individual),

242) Briana Williams (An Individual),

243) Darrell Missey (An Individual),

244)    Deputy Trevor Zugmaier (An Individual),

245)    Deputy Krystal Rock (An Individual),

246)    Deputy Fluck (An Individual),

247)    Franco Sicuro (An Individual),

248)    Gordon H Robinson (An Individual),

249)    Ed Page (An Individual).

Defendant(s),

*Detriments to Society.*

*[x NO. OF CLAIMANTS WITH GRIEVANCES], If More Than One.

## *No. VII* VERIFIED CLAIM *for* VIOLATIONS *of* THE RACKETEER INFLUENCED *and* CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961-1968; VIOLATIONS *of* 42 U.S.C. § 1983; *and* GEORGIA STATE LAW CLAIMS.

Priority One: The minor offspring subject to this case are Claimant(s), and are under the protection of *We the People.*

COMES NOW, the Claimant(s)  and on behalf of their minor offspring initiate this landmark case which aims to put an end to widespread corruption, systemic abuses, and the misuse of the discredited Parental Alienation Syndrome (P.A.S.) theory, which has caused irreparable harm to numerous families and individuals in the United States. The Claimant(s) have been alienated from their offspring for a prolonged period of time and been forced to endure negligence and abuse from the following individuals while fighting for justice. Therefore, the following Defendant(s) are being sued in their individual capacity for acting solely in their own best interest(s) in collaboration with the FCCE (Family Court Criminal Enterprise).

## I.     DISCLOSURE

FOR DIRECT AND IMMEDIATE DELIVERY TO ADDRESSEES BELOW

NOTE: Any failure to deliver this communication directly & immediately to the addressees are crimes including Mail & Wire Fraud & Tampering, Witness Tampering & R.I.C.O. acts for which you are criminally & civilly liable.

18 U.S. Code Chapter 63 - MAIL FRAUD AND OTHER FRAUD OFFENSES

18 U.S. Code 1701, 1703, 1708, 1341, 371, 1502, 1961 March 27, 2024

TO:

*The City of Saint Louis Sheriff's Office* (Defendant) (i)

https://dockets.justia.com/docket/missouri/moedce/4:2024cv00494/210970

1114 Market St. 1st floor, St. Louis, MO 63101. (314) 622-4851

1)  Neil Hogan  (Defendant)

2)  George Allen Crouch  (Defendant)

3)  Sargent Simon  (Defendant)

4)  McClure  (Defendant)

*Saint Louis City P.D.* - 3157 Sublette Ave, St. Louis, MO 63139,  (314) 444-0100,

MEDIA@slmpd.org (Defendant) (i)

https://www.aclu.org/press-releases/aclu-missouri-files-lawsuit-against-city-st-louis-unconstitutional-police-conduct

(ii) https://en.m.wikipedia.org/wiki/St._Louis_Metropolitan_Police_Department

(iii)

https://www.police1.com/police-jobs-and-careers/articles/st-louis-police-sergeant-who-won-800k-lawsuit-against-city-is-suing-again-2g8wtJtJAfKt3SgL/

5) Darnell M. Willis (Defendant)

6) Edward Miles (Defendant)

7) Daymond Wayne Lynn  (Defendant)

8) Megan Anne Rodgers  (Defendant)

9) Shamantha Edwards  (Defendant)

*Crisis Intervention Team (CIT) of Saint Louis City*  (Defendant)

10) Brewer- Badge #126 (Defendant)

*Crawford County P.D.*- 212 S 3rd St, Steelville, MO 65565, (573) 775-3121, acarnal@crawfordcountyso.org  (Defendant)

11) Adam Carnal  (Defendant)

12)  Hecox (Defendant)

13)  Eric Willbanks (Defendant)

14) Lunyou (Defendant)

15) McKinney (Defendant)

16) Smith (Defendant)

17) Brooks (Defendant)

*Richmond Heights P.D.*-  (Defendant), 7447 Dale Ave, Richmond Heights, MO 63117, (314) 655-3630, tschilli@richmondheights.org

18) Sargent Schilli  (Defendant)

*Franklin County P.D.*- (Defendant), 1 Bruns Ln, Union, MO 63084, (636) 583-2567.

19) Corporal Scharfenberg (Defendant)

20) "Jeff" - Homeland Security- 314-605-7748, 1222 Spruce St, St. Louis, MO 63103

   (Defendant(s))

21) Federal Bureau of Investigation (FBI of STL), (314) 589-2500, 2222 Market St, St.

   Louis, MO 63103, stlouis@fbi.gov (Defendant)

22) The Bar Association of Metropolitan St. Louis- 319 N 4th St Suite 100, St. Louis, MO

   63102, (314) 421-4134 (Defendant)

23) Internal Affairs Division- 1915 Olive Blvd. St. Louis, Missouri 63103, Office (314)

   444-5405, Fax (314) 444-5711 (Defendant)

24) Attorney General's Office- 815 Olive St, St. Louis, MO 63101, (314) 340-6815

   (Defendant)

25) DCFS Crawford County- Amanda Norris, Social Worker, 573- 899-6190, 272 Cushing

   Rd. PO Box 310 Steelville, MO 65565, 573-899- 6110 (Defendant)

26) Sullivan Police Department- Jorden Berti, Administrative Assistant, 106 Progress Dr,

   Sullivan, MO 63080, spdclerk@sullivan.mo.us , 573-468-8001 (Defendant)

27) Missouri Department of Social Services Children's Division (County of Saint Louis)-

   4316 LINDELL BLVD. SAINT LOUIS, MO. 63108 (Defendant)

28) Mary R. Russell- 207 W. High St. Jefferson City, MO. 65101, 573- 751- 4144

   (Defendant)

29) Judge John R. Lasater- Bar Number 38905, 21st Judicial Court, Saint Louis County

   Family Court, 105 S Central Ave. Clayton, MO 63105, Division 15,

   John.Lasater@courts.mo.gov (Defendant)

30) Judge Mary E. Ott- 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105, Division 7 (Defendant)

31) Judge Scott Bernstein- 42nd Circuit Court in Crawford County, Missouri (Defendant)

32) Judge Robert M. Heggie- 21st Judicial Court, Saint Louis County Family Court,105 S Central Ave. Clayton, MO 63105, Division 42  (Defendant)

33) Laura Roy- Clerk of Court, Missouri Court of Appeals Eastern District, One Post Office Square, 815 Olive St. #304, St. Louis, MO 63101 (Defendant)

34) Kurt S. Odenwald- Appeals Court Judge, Division 2, Missouri Court of Appeals Eastern District, One Post Office Square, 815 Olive St. #304, St. Louis, MO 63101 (Defendant)

35) Michael E. Gardner- Appeals Court Judge, Division 2, Missouri Court of Appeals Eastern District, One Post Office Square, 815 Olive St. #304, St. Louis, MO 63101 (Defendant)

36) Renee Hardin- Tammons- Appeals Court Judge, Division 2, Missouri Court of Appeals Eastern District, One Post Office Square, 815 Olive St. #304, St. Louis, MO 63101 (Defendant)

37) Domestic Relations Department of Saint Louis County- 105 S Central Ave. Clayton, MO 63105 (Defendant)

38) Kelly Landre- Wright - FC Deputy Juvenile Officer, kelly.landre-wright@courts.mo.gov, 314-615-8072,  https://www.linkedin.com/in/kelly-wright-11225460, 105 S Central Ave. Clayton, MO 63105 (Defendant)

39)  Olainki Spraggins- DRS Project Coordinator, 314-615-0369, 105 S Central Ave. Clayton, MO 63105,

https://www.linkedin.com/in/olainki-spraggins-msw-b528277?original_referer=https%3A%2F%2Fwww.google.com%2F  (Defendant)

40) Gina Dean and Duwain Dean- 2743 Camp Mo- Val Rd. Union MO. 63084, Former Address; 2 JennyCliffe Ln. Chesterfield MO. 63005, 314-368-9916 (Defendant(s))

41) Brian Wach, "Government"- 1035 White Hawk Dr. Cuba, MO. 65453, Number Unlisted, https://www.linkedin.com/in/brian-wach-85355a87  (Defendant)

42) Betty Jene Hansmann (Paternal Grandmother of Claimant's Offspring)-  2220 Silver Lake Estates Dr. Pacific, MO, 63069, 314-616-5915, closerdocs@yahoo.com (Defendant)

43)  Justin Wach- 114 South Rolla St. Rolla, MO. 65401. 314- 437- 4492, justindwach@gmail.com (Defendant)

44) Gabby Olejnik- Tampered Witness, Personal Information Redacted (Defendant)

45) Cortnie Hulett- Tampered Witness, Personal Information Redacted (Defendant)

46) William Gregory- Tampered Witness, Personal Information Redacted (Defendant)

47) Troy Korte- Tampered Witness, Personal Information Redacted (Defendant)

48) Beth Lewandowski- Bar Number 42391, Guardian Ad Litem (G.A.L.) Divorce lawyer, 2010 S Big Bend Blvd, Richmond Heights, MO 63117, (314) 540-1018, lewandowski.beth@gmail.com (Defendant)

49) John Fenley- Bar Number 63810, R.H.F. Legal- 2016 S Big Bend Blvd, St. Louis, MO 63117, (314) 333-4140, john@rhflegal.com, https://rhflegal.com/ (Defendant)

50) Jacqueline Matreci- Bar Number 63063, 120 South Central Ave. Suite 450, Clayton, MO 63105, (314) 963-4700, JAMatreci@lsem.org (Defendant)

51)  Laura Stobie- Bar Number 62154, Associate Attorney at Mccarthy, Leonard &

Kaemmerer, 825 Maryville Centre Dr #300 Chesterfield, MO 63017, 314.392.5200 Ext

1163, lstobie@mlklaw.com, Stobie Family Law Group, LLC. P.O. Box 6280

Chesterfield, MO. 63006, (314) 549-7857, laura@stobiefamilylawgroup.com,

http://www.mlklaw.com,

https://data-lead.com/company/name/Mc+Carthy+Leonard+%26+Kaemmerer/id/120606

3/v/96a8904d (Defendant)

52)  Sarah Melz- Bar Number 67346,

https://data-lead.com/person/name/Sarah+Melz/id/37496076/v/52340 (Defendant)

53) Jacquelyn Gonz- Bar Number 40341, 21450 MO-32 Suite B, Ste. Genevieve, MO 63670,

314-287-5959, Jackiegonzlawyer@outlook.com (Defendant)

54) Kelly Chevalier- Bar Number 57068, 7710 Carondelet Ave UNIT 404, St. Louis, MO

63105,  (314) 249-5936, kellychevalier64@email.com (Defendant)

55) James N. Fendelman- Bar Number 63132, 9666 Olive Blvd Ste 690, St. Louis, MO

63132, (314) 725-9790, jfendelman@fptlaw.com (Defendant)

56) Dr. Christopher Parks- Oral Surgeon, Sullivan Affordable Dentures and Implants, 400

Cumberland Way Suite A, Sullivan, MO 63080, (573) 468-7556  (Defendant)

57) Dr. Mina Charepoo- Psychiatrist, BJC, CAMPUS BOX 8134 DEPARTMENT OF

PSYCHIATRY, 660 S Euclid Ave, St. Louis, MO 631101010 - (314) 286-0200,

(Defendant)

58) Dr. Lebowitz- Psychiatrist, BJC, CAMPUS BOX 8134 DEPARTMENT OF

PSYCHIATRY, 660 S Euclid Ave, St. Louis, MO 631101010 - (314) 286-0200

(Defendant)

59) Dr. Susan Sanderson- Psychologist, Family Life Counseling- 4142 Keaton Crossing Blvd

#101, O'Fallon, MO 63368,  (636) 300-8971 (Defendant)

60) Jodie Hodge- Supervisor, Every Child's Hope- 8240 St.Charles Rock Rd. St.louis, MO 63114, (314) 427-3755 (Defendant)

61) Tina Nugent- Bringing Families Together, 7151 N Lindbergh Blvd. Hazelwood MO. (314) 731-3969 (Defendant)

62) Lutricia Allen- Supervisor, Bringing Families Together- 7151 N Lindbergh Blvd. Hazelwood MO. (314)731-3969 (Defendant)

63) Bill Grant- Divorce Lawyer 7733 Forsyth Blvd. Suite 1850 St.louis MO. 63105 (314) 721-6677 (Defendant)

64) Crista Beracha- Guardian Ad Litem- PO. Box 440364, 2004 Parkridge Ave. St.louis MO. 63144, (314)963-4439 (Defendant)

65) Jennifer Hoffman- Family law Attorney, 120 S central Ave. St.louis MO. 63105, (314) 721-7778 (Defendant)

66) Bridgett Kastner- 5822 Walsh St. St.louis, MO. 63109-3120, (314) 524-6953 (Defendant)

67) Good Shepherd- 1340 Partridge Ave. St.louis, MO. 63130, (314) 854-5700 (Defendant)

68) Teresa Langford- 4316 Lindell Blvd. St.louis, MO. 63108, (314) 531-3183 (Defendant)

69) Patricia Seidel- DJO, 105 S Central Ave. Clayton MO. 63105, (314) 615-4400 (Defendant)

70) Tiffany Hytrek- Family Law Attorney, Family Law Partners- 699 A trade Center Blvd. Chesterfield MO. 63005, (636) 778-3400 (Defendant)

71) Ann Pendegrass- Jewish Family Services, 10950 Schuetz Rd St.Louis MO. 63146, (314) 812-9381 (Defendant)

72) Colby T. Newborn- 3776 Hwy 51 North Arcedelphia, AR. 71923, (501) 229-3973 (Defendant)

73) Armand Wilson- 5864 Enright Blvd. St. Louis MO. 63112 (Defendant)

74) Briana Williams- 622 Dover Place Saint Louis MO. 63111, brianawilliams0815@gmail.com (Defendant)

75) Brenton Williams- 622 Dover Place Saint Louis MO. 63111, brentonwilliams2296@gmail.com (Defendant)

76) Jamie Lynn Emahiser- 699A Trade Center Blvd, Chesterfield, MO. 63005, (636) 778-3400 (Defendant)

77) Ryley Hamilton- 699A Trade Center Blvd, Chesterfield, MO. 6300, (636) 742-1418 (Defendant)

78) Mayra Flesner- 820 SOUTH MAIN ST. STE 200 ST. CHARLES, MO 63301, (636) 442-4529 (Defendant)

79) Ericka Wentzel- Flesner Wentzel Family Law,  820 S Main St #200, St Charles, MO. 63301, (636) 452-4529 (Defendant)

80) Alejandro A. Sigala- 1902 STRAWBERRY RIDGE DR BALLWIN, MO 63021 (Defendant)

81) Alicia Sigala- 1902 STRAWBERRY RIDGE DR BALLWIN, MO 63021 (Defendant)

82) George Edward Tillman- 814 1st Capitol Drive Saint Charles, MO. 63301, (636) 373-8606, george@georgetillman.com (Defendant)

83) Kimberly Jean Coleman- 8112 MARYLAND AVENUE SUITE 400 CLAYTON, MO 63105 (Defendant)

84) Matthew Edwin Lee Voorhees- 8112 MARYLAND AVENUE SUITE 400 CLAYTON, MO 63105 (Defendant)

85) Elliott I. Goldberger- 130 SOUTH BEMISTON SUITE 400 CLAYTON, MO 63105 (Defendant)

86) Patrick W. Pedano- 699A TRADE CENTER BLVD CHESTERFIELD, MO 63005 (Defendant)

87) Elizabeth Middleton Sheehan- 100 South Brentwood Boulevard St. Louis, MO. 63105, (314) 726-2300 (Defendant)

88) Shirley R. Tasker- Coulter Lambson 130 S BEMISTON AVE STE 400 CLAYTON, MO 63105, (314) 309-2377 (Defendant)

89) Shelby C. Shire- 14269 TRAILTOP DR CHESTERFIELD, MO 63017 (Defendant)

90) Jillian Brown- 1327 SHADY GREEN DRIVE SAINT LOUIS, MO 63128 (Defendant)

91) Joseph S. Sanchez- Attorney, 130 E Main St, Festus MO. 63028 (Defendant)

92) Deborah C. Moron Henry- 714 LOCUST ST. ST. LOUIS, MO 63101, (314) 436-8380 (Defendant)

93) Carol Love- Therapist, 1034 S Brentwood Blvd, Suite 678, Saint Louis, MO 63117, (314) 665- 2301 (Defendant)

94) Jeff Millar- Millar Law Firm, LLC. P.O. Box 143 St. Charles, MO. 63302 (636) 448-4982, millarlawfirm@gmail.com (Defendant)

95) Sandra Faragut Hemphil- Circuit Judge, Division 3, 105 South Central Avenue Clayton, MO. 63105 (Defendant)

96) John Thomas Nanny- Psychologist, 24 South Gore, St. Louis, MO. 63119, (314) 936-4738 (Defendant)

97) John Borbonus- Circuit Civil and Criminal Court Judge, Division 6, 105 South Central Avenue Clayton, MO. 63105, (314) 615-8029 (Defendant)

98) Jason D. Dodson- Family Court Administrative Judge, Division 10, 105 South Central Avenue Clayton, MO. 63105, (314) 615-1510 (Defendant)

99) Alicia Carter- Court Reporter, Division 10, 105 South Central Avenue Clayton, MO. 63105, (314) 615-1510 (Defendant)

100)    John Tressler- May be found at 233 S Wacker Dr 61st floor, Chicago, IL 60606, (312) 627- 4000,  https://www.courts.mo.gov/page.jsp?id=167479, https://youtu.be/FC3geeX_nAY?si=Xh7EKgWSUfCWCqCx (Defendant)

101)    Marshall Hoekel- 130 East Lockwood, St.louis MO 63119, (855) 805-3174 (Defendant)

102)    Evita Tolu- 9378 Olive Blvd #307, Olivette, MO 63132, (314) 323- 6022 (Defendant)

103)     Anna Elizabeth Connely- Deputy Chief Counsel, Missouri Attorney General's Office Supreme Court Building- 207 W. High St. P.O. Box 899, Jefferson City, MO. 65102, 573-751-3321 (Defendant)

104)    Sioban Akers- 825 Maryville Centre Dr. Suite 300 Chesterfield MO. 63017, (314) 392-5200 (Defendant)

105)    Mathew H. Noce- 12444 Powerscourt Drive Suite 160, St. Louis MO. 63131, (314) 789-1199 (Defendant)

106)     Joan M. Gilmer- Circuit Clerk, 105 South Central Avenue Clayton, MO. 63105 (Defendant)

107)    Joseph L. Green- Circuit Judge, 105 South Central Avenue Clayton, MO. 63105 (Defendant)

108)    Megan Julian Higgins- Circuit Judge, 105 South Central Avenue Clayton, MO. 63105 (Defendant)

109)    Mercy Hospital South- 10010 Kennerly Rd. St. Louis MO. 63128, (314) 525 -1000 (Defendant)

110)    Robinwood Elementary School- 955 Derhake Rd, Florissant, MO 63033, (314) 831-4633 (Defendant)

111)    Saint Louis County P.D.-  7900 Forsyth Blvd, Clayton, MO 63105, (636) 529- 8210 (Defendant)

112)    Henry Miller, Jr.- Family law Divorce attorney, 7733 Forsyth Blvd. suite 1850 St.louis MO. 63105 (Defendant)

113)    Sarah Pleban- 7733 Forsyth Blvd, St. Louis, MO 63105, (314) 647- 6677 (Defendant)

114)    Elaine Pudlowski- 231 S Bemiston Ave #1111, St. Louis, MO 63105, (314) 725- 8000 (Defendant)

115)    Michael L. Parson-  P.O. Box 720. Jefferson City, MO 65102, (573) 751- 3222 (Defendant)

116)    Saint Louis Federal Court Legal Advice Clinic- Eagleton US Courthouse, 111 S. 10th Street, St. Louis, MO 63102 (Defendant)

117)    Colleen Hubble- 5353 S LINDBERGH BLVD STE 210 ST LOUIS, MO 63126, (314) 270-3530 (Defendant)

118)    Arthur Nissenbaum- R.H.F. Legal, 2016 S Big Bend Blvd, St. Louis, MO 63117 (Defendant)

119)    Jennifer Piper- 130 S Bemiston Ave UNIT 608, St. Louis, MO 63105, (314) 449-9800 (Defendant)

120)    Robert N. Hamilton- R.H.F. Legal, 2016 S Big Bend Blvd, St. Louis, MO 63117,

https://www.justice.gov/opa/pr/five-charged-connection-covid-relief-fraud-scheme

(Defendant)

121)    Holly Hamilton- Therapist-  R.H.F. Legal, 2016 S Big Bend Blvd, St. Louis, MO

63117 (Defendant)

122)    Mary W. Greaves- Circuit Judge,105 South Central Avenue Clayton, MO. 63105

(Defendant)

123)    Nicole Zellweger- Circuit Judge, 105 South Central Avenue Clayton, MO. 63105

(Defendant)

124)    Patricia Ann Riehl- Attorney/ Former Judge, 23rd district, 500 North Broadway, Suite

1800, St. Louis MO. 63102, (314) 603-7138 (Defendant)

125)    Kimberly D. Whittle- 8000 CRESCENT DRIVE CLAYTON, MO 63105, (314)

517-5587 (Defendant)

126)    Averhealth- 400 North Tucker Blvd. Saint Louis MO. 63301, (314) 231-8029

(Defendant)

127)    Dale W. Hood- Judge, 105 South Central Avenue Clayton, MO. 63105 (Defendant)

128)    Mark W. Haefner- 3870 S LINDBERGH BLVD STE 120 ST LOUIS, MO 63129,

(314) 200-6101 (Defendant)

129)    Cara C. Keeble- 134 W. MADISON AVENUE KIRKWOOD, 63122, (314) 725-8881

(Defendant)

130)    Andrew Pichler- Bollwerk and Tatlow LLC 10525 Big Bend Rd ST LOUIS, MO

63122, (314) 315-8111 (Defendant)

131)    Charles B. Flynn- 7733 Forsyth Boulevard SUITE 1850 ST LOUIS, MO 63105,

(314) 721-6677 (Defendant)

132)    Kenyatta Eleby- Circuit Manager, Wainwright Building, 111 North 7th street 3rd

floor, P.O. Box 771820. Saint Louis MO. 63177, (314) 340-7000, Children's Services,

(314) 340-7007 (Defendant)

133)    Ashley Janel Moore- Council Member, District 9, Moore legal LLC, Saint Louis MO.

(314) 497-0473, P.O. Box 119, 326 Monroe Jefferson City, MO 65102-0119, (573)

635-4128 (Defendant)

134)    Rachna Lien Attorney- The Lien Law Firm, 231 S Bemiston Ave #800 Clayton MO.

63105, (314) 722-8557 (Defendant)

135)    Jesus Alejandro Martinez Reyes- 1034 S Brentwood Blvd. Suite 1540, St. Louis MO.

63117, (314) 742-7264 (Defendant)

136)    Lance Christian Bretsnyder- 105 S Central Ave. Clayton MO 63105-1772, St. Louis

County, (314) 615-2943 (Defendant)

137)    Michelle Hammond- Guardian ad litem, 820 main street suite 208 Saint Charles MO.

63303, (636) 949-7900 (Defendant)

138)    Rick L Nelson- Attorney, 6822 Olive Blvd. #200 St.louis MO. 63130, (314) 862-1444

(Defendant)

139)    Chimene Yavonne Laskey- Legal Officer at the Saint Louis County Family Court,

105 S. Central Ave, Clayton MO. 63105-1772 (Defendant)

140)    John R Bird- 906 Olive Street suite 1115 St. Louis MO. 63101-1433, (314) 241-6144

(Defendant)

141)    Troy Justin Anderson- Attorney for the Juvenile Officer, Saint Louis County Family

Court, 120 S Central Ave #450, Clayton, MO 63105,

https://www.linkedin.com/in/troy-anderson-a54194b1 (Defendant)

142)    Diane Monahan- Judge, Family Court Commissioner, 105 S. Central Ave. Clayton

MO. 63105 (Defendant)

143)    Carl Seltzer- Attorney, Legal Services of Eastern MO. 701 Market St, St. Louis, MO.

63101, https://www.linkedin.com/in/carl-seltzer-b87b9620 (Defendant)

144)    Tiffany Ann Hytrek- Associate Attorney, 699A Trade Center Blvd, Chesterfield, MO.

63005, (636)778-3400 (Defendant)

145)    Linda Colburn- Attorney, 7730 Carondelet Street, St. Louis MO. 63105 (Defendant)

146)    Alinda Dickerson- 2430 Petrova Ave. Saint Louis MO 63136 (Defendant)

147)    Michael Dickerson- 8901 Iroquois Drive Saint Louis MO 63132 (Defendant)

148)    Cynthia Newborn- 180 Windcrest Dr. Malvern Arkansas 72104,

cdnewborn@sbcglobal.net (Defendant)

149)    Joanne Wilson- 5864 Enright Ave. Saint Louis MO. 63112, ruth.owsley@msn.com

(Defendant)

150)    Armand Wilson- 5864 Enright Ave. Saint Louis MO. 63112,

armandwilson83@yahoo.com (Defendant)

151)    Erica Jenkins- DJO, 21st Judicial Court, Saint Louis County Family Court, 105 S

Central Ave. Clayton, MO 63105 (Defendant)

152)    Hannah Weis- 7151 N Lindbergh Blvd, Hazelwood, MO 63042 (Defendant)

153)    Kerry Duncan Allen- 2295 Federalist Pl. O'Fallon, MO. 63368, (314) 707-3315

(Defendant)

154)   Crista Beracha- Attorney, PO Box 440364 St. Louis, MO. 63144, 314.308.5722, cristaberacha@me.com (Defendant)

155)   Marshall Hoekel- Attorney, 5 Plant Ave # 2, St. Louis, MO 63119, (314) 835- 3222 (Defendant)

156)   Leigh Carson- Attorney, 7710 Carondelet Ave. Suite 105 Clayton, MO 63105, (314) 721-2422 (Defendant)

157)    Arthur H. Nissenbaum- Attorney, 2016 S Big Bend Blvd, Richmond Heights, MO 63117, (314) 333- 4153 (Defendant)

158)   Justin Ruth- Attorney, 7700 Bonhomme Avenue, 7th Floor, St. Louis, Missouri 63105 (314) 727-0101 (Defendant)

159)   Jennifer Piper- Attorney, 130 S Bemiston Ave UNIT 608, St. Louis, MO 63105 (314) 449- 9800 (Defendant)

160)    Sharon Remis- Attorney,120 South Central Ave. Suite 650 Clayton, MO 63105 (314) 863 – 5444, SRemis@GHC-Law.com (Defendant)

161)   Rachna Lien- Attorney, 231 S Bemiston Ave #800, Clayton, MO 63105, (314) 722- 8557 (Defendant)

162)    Deborah Roeder- Attorney, 2001 S Big Bend Blvd, St. Louis, MO 63117, (314) 231- 0066 (Defendant)

163)   Maia Brodie- Attorney, 8909 Ladue Rd. St. Louis, MO 63124, (314) 726- 6242 (Defendant)

164)   David S. Betz- Attorney,120 E Lockwood Ave, St. Louis, MO 63119, (314) 801- 8488 (Defendant)

165)    Amy Diemer- Attorney, 225 S Meramec Ave # 528T, St. Louis, MO 63105, (314)

        863- 8833 (Defendant)

166)    Shevon Harris- Representative for the Office of Chief Disciplinary Counsel of the

        Supreme Court of Missouri, 3327 American Ave, Jefferson City, MO 65109, 9666 Olive

        Blvd., Suite 370 Olivette, MO 63132, (314) 997- 7700, (314) 444-7707 (Defendant)

167)    Mark Kiesewetter- Attorney, 5353 S Lindbergh Blvd Ste 210. St. Louis, MO

        63126-3556 (Defendant)

168)    Greg Brough- Attorney, 9666 Olive Boulevard, Suite 690 Olivette, MO 63132, (314)

        725-0001 (Defendant)

169)    Venus Jackson- Attorney, 7584 OLIVE BOULEVARD STE. 201, ST. LOUIS, MO,

        63130, UNITED STATES, (314)-721-7230,

        VENUSESQUIRE@VENUSESQUIRE.COM (Defendant)

170)    Lisa Sigmund- Attorney, 7777 Bonhomme Ave. Saint Louis, MO 63105, (314)

        725-5151 (Defendant)

171)    Lynn Reichert- Attorney, 906 Olive St # 1115, St. Louis, MO 63101, (314) 241- 2902

        (Defendant)

172)    Colleen Hubble- Attorney, 5353 S Lindbergh Blvd Ste 210. St. Louis, MO

        63126-3556 (314) 270-3530 (Defendant)

173)    Mary Davidson- Attorney, 7710 Carondelet Ave. Suite 105 St. Louis, Missouri

        63124, (314) 862-0200, mdavidson@laduelaw.com (Defendant)

174)    Cynthia Albin- Attorney, 415 N 2nd St, St Charles, MO 63301, 7700 Bonhomme

        Ave. Suite 325 Clayton, MO, 63105, (636) 443- 2313 (Defendant)

175)   Sylvia Pociask- Attorney, 2001 S Big Bend Blvd, Richmond Heights, MO 63117, (314) 441- 7044 (Defendant)

176)   Molly Murphy- Attorney, 8764 Rosalie Ave, Brentwood, MO 63144, (314) 440-1090 (Defendant)

177)   Julia Pusateri Lasater- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant)

178)   Jeffrey Paul Medler- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant)

179)   Matthew Hill Hearne- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant)

180)   Bruce F. Hilton- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant) (i) https://amp.cnn.com/cnn/2024/09/23/us/marcellus-williams-missouri-supreme-court-hearing (ii) https://nationalpolice.org/main/missouri-judges-baffling-bond-decision-turns-deadly/

181)   Amanda Bundren McNelley- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant)

182)   Jason D. Dodson- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant)

183)   Judge Sarah E. Pitlyk- Judge, 111 S 10th St # 3.300, St. Louis, MO 63102, (314) 244- 7900 (Defendant)

184)   Joe Biden- State Imposter, President, 1600 Pennsylvania Ave NW Washington, DC 20500, (202) 456- 1111,  (i)

https://www.voanews.com/a/with-or-without-parents-missing-immigrant-children/4415174.html (Defendant)

185)   Health and Human Services of the United States- 200 Independence Avenue, S.W. Washington, D.C. 20201, (877) 696-6775 (Defendant)

186)   D.C.F.S. Saint Louis- Wainwright State Office Building, 111 N 7th St #204, St. Louis, MO 63101, (314) 340- 7400 (Defendant)

187)   The Department of Social Services- 200 Independence Avenue, S.W. Washington, D.C. 20201, (877) 696-6775 (Defendant)

188)   Krista S. Peyton- Judge, 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105 (Defendant)

189)   Frank Ross Gipson- Assistant Prosecuting Attorney, 130 CEDAR LN GLEN CARBON, IL 62034 (Defendant)

190)   Henry Edward Autrey- Judge, 111 S 10th St # 3.300, St. Louis, MO 63102, (314) 244- 7900 (Defendant)

191)   Stephen R. Clark- Judge, 111 S 10th St # 3.300, St. Louis, MO 63102, (314) 244- 7900 (Defendant)

192)   Matthew T. Schelp- Judge, 111 S 10th St # 3.300, St. Louis, MO 63102, (314) 244- 7900 (Defendant)

193)   Rodney W. Sippel- Judge, 111 S 10th St # 3.300, St. Louis, MO 63102, (314) 244- 7900 (Defendant)

194)   John M. Bodenhausen- Judge, 111 S 10th St # 3.300, St. Louis, MO 63102, (314) 244- 7900 (Defendant)

195) The Missouri Department of Social Services- Broadway State Office Building, 221 W High St, Jefferson City, MO 65101 (Defendant)

196) Charles Thompson- 19 MARYMOUNT CT ST LOUIS, MO 63105 (Defendant)

197) Brittany Erker- 601 S. Lindbergh Blvd. Frontenac, MO 63131 (Defendant)

198) Jenna Conley- 1000 FAIRGROUNDS SUITE 201 SAINT CHARLES, MO 63301 (Defendant)

199) Betty Thompson- 14242 Cedar Springs Dr. Town and Country, MO. (Defendant)

200) Bradley R. Bodeux-  #60455, 228 N. Main Street St. Charles, MO 63301, (314) 494-2723, (636) 949-8277 - fax, bradley@bodeuxlawgroup.com. (Defendant)

201) Chad Rackers- 332 Jungermann Road, Suite B, Saint Peters, Missouri 63376, United States (Defendant)

202) Sanda Smajlovic-Gunn- 332 Jungermann Road, Suite B, Saint Peters, Missouri 63376, United States (Defendant)

203) Van Buskirk- Officer, Valley Park Police Department, 320 Benton St # A, Valley Park, MO 63088 (Defendant)

204) Myra Leary- 825 Maryville Centre Dr #300 Chesterfield, MO 63017, 314.392.5200 Ext 1163, lstobie@mlklaw.com, Stobie Family Law Group, LLC. P.O. Box 6280 Chesterfield, MO. 63006, (314) 549-7857, laura@stobiefamilylawgroup.com, (Defendant)

205) Adam Coonce- 825 Maryville Centre Dr #300 Chesterfield, MO 63017, 314.392.5200 Ext 1163, lstobie@mlklaw.com, Stobie Family Law Group, LLC. P.O. Box 6280 Chesterfield, MO. 63006, (314) 549-7857, laura@stobiefamilylawgroup.com, (Defendant)

206)    Kenzie Mooty- 825 Maryville Centre Dr #300 Chesterfield, MO 63017, 314.392.5200
Ext 1163, lstobie@mlklaw.com, Stobie Family Law Group, LLC. P.O. Box 6280
Chesterfield, MO. 63006, (314) 549-7857, laura@stobiefamilylawgroup.com,
(Defendant)

207)    Jenna Rohr Conley-  1000 FAIRGROUNDS SUITE 201 SAINT CHARLES, MO
63301 (Defendant)

208)    The Supreme Court of Missouri- 207 W High St, Jefferson City, MO 65101
(Defendant)

209)    Betsy Ledgerwood- Supreme Court of MO. Clerk of the Court, 207 W High St,
Jefferson City, MO 65101 (Defendant)

210)    Kelly Ploesser- Department of Social Services, Children's Division, Jefferson County
Office, 10325 Business 21, Suite 200 Hillsboro, MO 63050 Cell: (314) 605 0563,
Kelly.R.Ploesser@dss.mo.gov (Defendant)

211)    Emily Mathews- State of Missouri, Department of Social Services, Children's
Division, Jefferson County Office, 10325 Business 21 Suite 200 Hillsboro MO 63050,
Telephone: (636) 797-9652, FAX: (636) 797-9781, Email: Emily.C
Mathews@dss.mo.gov (Defendant).

212)    The Ballwin Police Department- 302 Kehrs Mill Rd, Ballwin, MO 63011 (Defendant)

213)    Michael Burgoyne- Badge No. 2307,  302  Kehrs Mill Rd, Ballwin, MO 63011
(Defendant)

214)    Nathan S. Cohen- 210 S Bemiston Ave, St. Louis, MO 63105 (Defendant)

215)    James D. Reid, Ph.D., LLC- 7 North Jackson Ave, Suite 100 Clayton, MO 63105,
(314) 582-3646 (Defendant)

216)    Jefferson County Sheriff's Department-  400 1st Street, Hillsboro, MO 63050

(Defendant)

217)    Nicole Mertens Senn (Defendant)

2137 Wilderness Trail

Barnhart, MO 63012

218)    Jessica Whelan Giddens (Nurse Practitioner) (Defendant)

130 ST Thomas Ln

Cahokia, IL 62206

219)    Devon Nicole Votaw (Case Worker, Family Forward) (Defendant)

4500 Cedar Tree Ln

Desoto, MO 63020

220)    David Redmond Crosby (Attorney) (Defendant)

PO Box 79

255 Main St

Hillsboro, MO 63050

221)    Darrell Missey (Director of Children Division Missouri) (Defendant)

9900 Page Ave, St. Louis, MO 63132

222)    Deputy Trevor Zugmaier (#737, Jefferson County Sheriff) (Defendant)

400 1st Street, Hillsboro, MO 63050

223)    Deputy Krystal Rock (#873, Jefferson County Sheriff) (Defendant) 400 1st Street,

Hillsboro, MO 63050

224)    Deputy Fluck (Defendant) (DSN #849, Jefferson County Sheriff)

400 1st Street, Hillsboro, MO 63050

225)    Franco Sicuro (Psychiatrist) (Defendant)- 2301 Hampton Ave in St. Louis, MO.

(i)

https://www.justice.gov/usao-edmo/pr/chesterfield-psychiatrist-admits-conspiracy-linked-health-care-fraud

(ii)

https://www.cchrstl.org/wordpress/2022/11/21/chesterfield-psychiatrist-admits-health-care-fraud/

(iii)

https://www.healthcare6.com/physician/saint-louis-mo/franco-sicuro-675034.html

226)    Gordon H Robinson (Psychiatrist over Jessica Whelan) (Defendant)

11124 S Towne Square #100

St. Louis, MO 63123

227)    Olive Street Pharmacy (Defendant)

10420 Old Olive Street Rd

Suite 103

Creve Coeur, MO 63141

228)    Holon Inclusive Health System (Defendant)

301 S Main St

Dupo, IL 62239

229)    Family Forward (Defendant)

4626 Yeager Rd

Hillsboro, MO 63050

230)    WebWatcher by Awareness Technologies (Defendant)

1391 Post Road East

Westport, Connecticut 06880

231)    WebWatcher (Defendant)

700 South Rosemary Ave, Suite 204-144

West Palm Beach, FL 33401

232)    Ed Page (Judge, Jefferson County Court) (Defendant)

400 1st Street, Hillsboro, MO 63050

233)    Darrell Missey (Director of Children's Division Missouri, First Judge on DFS case)
(Defendant)

9900 Page Ave, St. Louis, MO 63132

234)    Family Forward (Defendant)

4626 Yeager Rd

Hillsboro, MO 63050

235)    Mercy South (Defendant)

10010 Kennerly Rd

St. Louis, MO 63128

236)    Olive Street Pharmacy (Defendant)

10420 Old Olive Street Rd, Suite 103

Creve Coeur, MO 63141

237)    Holon Inclusive Health System (Defendant)

301 S Main St

Dupo, IL 62239

238)    WebWatcher by Awareness Technologies (Defendant)

1391 Post Road East

Westport, Connecticut 06880

239)    WebWatcher (Defendant)

700 South Rosemary Ave, Suite 204-144

West Palm Beach, FL 33401

## II. CLAIM

This Claim seeks remedy for Atrocity and High Crimes perpetrated in the Child Sale & Genocide-by-Guardian Crime Syndicate operated by the Defendant(s) and their accomplices.

*FINDINGS OF FACTS:*

A. SELF-EVIDENT AND SELF-AUTHENTICATED ATROCITY AND HIGH CRIMES:

1.  The Defendant(s) engage in unlawful acts to strip men, women & their offspring of their Unalienable Human & Natural Rights.

2.  These U.S.A. INC. Government Imposters invent void, self-serving codes to subvert Sovereign, Substantive Law.

3.  The Defendant(s) use these codes to render individuals "rights-less" and perpetrate Atrocity Crimes.

4.  The Defendant(s) invent fraudulent tribunals to carry out these crimes under the guise of a "court proceeding."

5. The Defendant(s) weaponize their codes and militarize their army of Government Imposters against *We the People.*

6. The Defendant(s) subverted the founding documents of the United States including the Declaration of Independence and Constitution. Their actions are a form of "Perfidy," a War Crime under the Geneva Convention.

7. The biggest business of U.S.A. INC is Kidnapping, Sale & Traffic of Children & Kidnapping, Sale, Traffic, Looting & Genocide of the Vulnerable.

8. Defendant(s) call their Codes & Crime Syndicates by "Protection Sounding Names" to mask their crimes.

9. *We the People* are living in a U.S.A. Inc. Holocaust far worse than that of Nazi Germany.

10. Tens of millions of Americans and the world population are & have been affected.

11. Multi-Trillions are embezzled & money laundered from the American & World's Wealth & Resources.

12. The Defendant(s) levy War against *We the People* by subverting, depriving, stealing and usurping our Unalienable Rights.

13. The Defendant(s) perpetrate Atrocity Crimes including Crimes against Humanity and Genocide and High Crimes under Color of Law.


B. RESPONDENTS, SUPREME JUDICIAL IMPOSTERS FALSELY PORTRAYED AS "SUPREME COURT JUSTICES" ARE THE PROTECTION ARM OF U.S.A. INC:


14. U.S.A. INC. Atrocity Crimes in the Child Sale and Genocide-by-Guardianship Crime Syndicate include Kidnap, Looting, Mass Murder, Murder for Hire, Enforceable

Disappearance, Genocide, Money Laundering, False Incarceration, Threats, Blackmail & Extortion, and Crimes Against the Public Trust.

15. The Atrocity and High Crimes are well known to, concealed, covered up and protected by the Supreme Judicial Imposters.

16. This is a systemic pattern and practice of the Supreme Judicial Imposters who use their positions to criminally violate, subvert, obstruct and deprive the Unalienable Rights of *We the People.*

17. Therefore, *We the People* humbly request a Lawful Order and Judgment effectuating:

a. Cease & Desist;

b. Return of our Family;

c. Formal Nullification of the already Void Codes including but not limited to those in Exhibit A;

d.  Formal Vacating the already void "Consent to Crimes Decrees" in the ruse of "court orders;"

e.  Disbanding the Child & Human Trafficking Tribunals falsely portrayed as "courts."

f. Massive Reparations & Return of our Pillaged Property, just as done by Germany. A Sum in Excess of $500,000,000,000,000 (Five Hundred Trillion Dollars) shall be funded.

18. *We the People* hereby hold the Defendant(s), Supreme Judicial Imposter(s) and all Government Imposter(s) accountable for their heightened criminal liability and civil damages.

19. *We the People* humbly request that all Defendant(s) and Supreme Judicial Imposter(s), falsely portrayed as "Supreme Court Justices," are to be federally indicted for kidnapping and human trafficking under R.I.C.O.'s expansive powers.

20. Void Child Trafficking, Human Trafficking, Looting, and Genocide Codes: The Void Codes utilized to subvert and conspire against our Unalienable Rights, facilitating the operations of Child Sale and Genocide-by-Guardian Crime Syndicates, encompass but are not limited to those delineated below.

21. Furthermore, through the fraudulent imposition of the Void Codes onto our taxpayer-funded public records, a series of discrete offenses emerge, including but not limited to the falsification, tampering, and alteration of public records.

22. These Codes are inherently void on their face and are hereby formally nullified.

23. Designed to be wielded by judicial impostors within human trafficking tribunals masquerading as "courts," these Void Codes serve as instruments for perpetrating the nefarious activities inherent in Child Sale, Trafficking, and Genocide Rackets.

24. These Color of Law Tribunals are hereby formally dissolved.

25. SAMPLING OF VOID CHILD TRAFFICKING CODES: THE "WILLIAM JEFFERSON CLINTON CHILD TRAFFIC CODE" FALSELY IDENTIFIED AS THE "ADOPTION AND SAFE FAMILIES ACT;" The "William Jefferson Clinton Child Sale and Trafficking Act" stands as a glaring testament to a monstrous mechanism employed to finance, perpetrate, and shield the abduction of children by Color of Law agencies.

26. Orchestrated and signed by Corporate Contractor Government Imposter William Jefferson Clinton in 1997, the William Jefferson Clinton Child Traffic Code embodies an egregious betrayal of trust.

27. In a manner reminiscent of Adolf Hitler, Bill Clinton bestowed upon his Monstrous Child Trafficking Code the deceptive cloak of a "protection sounding name": the "Adoption and Safe Families Act."

28. Collaborating with "Title IV," the William Jefferson Clinton Child Traffic Code precipitated the proliferation of Child Trafficking into a sprawling trillion-dollar enterprise, constituting the largest operation of its kind in history, imperiling every child, family, and visitor to the United States.

29. This scheme pillages American tax dollars and global wealth to fuel a federal imposter agency, euphemistically labeled the "Department of Health and Human Services," orchestrating this racket.

30. **EXHIBIT A:** VOID CHILD TRAFFICKING, HUMAN TRAFFICKING, LOOTING AND GENOCIDE CODES;

a.   ADOPTION AND SAFE FAMILIES ACT

b.   TITLE IV-D

c.   TITLE IV-E

d.   O.C.G.A. Title 15, Chapter 11 (Juvenile Code), and Title 19 (Domestic Relations).

e.   O.C.G.A. § 19-7-40 et seq. (Legitimation of Children).

f.   O.C.G.A. Title 15, Chapter 11 (Juvenile Code).

g.   O.C.G.A. § 15-11-10 (Jurisdiction of Juvenile Court).

h.   O.C.G.A. § 15-11-30.2 (Transfer of Cases).

i.   O.C.G.A. § 15-11-104 (Guardian ad Litem).

j.   O.C.G.A. § 15-11-601 et seq. (Disposition of Juvenile Cases).

k.   O.C.G.A. § 15-11-310 et seq. (Termination of Parental Rights).

l.   O.C.G.A. § 19-5-1 et seq. (Divorce).

m.   O.C.G.A. § 19-5-3 (Petition for Divorce).

n.   O.C.G.A. § 19-9-1 et seq. (Child Custody).

    o.  O.C.G.A. § 19-7-3 (Grandparent Visitation Rights).

    p.  O.C.G.A. § 19-9-3 (Modification of Child Custody Orders).

    q.  O.C.G.A. Title 19, Chapter 8 (Adoption).

    r.  O.C.G.A. § 19-13-1 et seq. (Family Violence Protective Orders).

    s.  O.C.G.A. § 9-11-24 (Intervention).

## C. ALL ALLEGED "GOVERNMENT EMPLOYEES" ARE GOVERNMENT IMPOSTORS

31. The United States of America Democratic Republic has been infiltrated, subverted, and is now operated by a conglomerate of fictitious, jurisdiction-less private corporations known as "U.S.A. INC.," registered with Dun & Bradstreet and other agencies including "SAM," a private corporation known only to insiders.

27. Every branch and agency functions as jurisdiction-less private corporate entities, cloaked under the guise of law, including entities like the "United States of America," the "President," and the "United States Supreme Court," as evidenced by their corporate registrations with Dun & Bradstreet.

28. These private corporate entities masquerade as public servant government bodies.

29. All employees are mere corporate officers/shareholders of jurisdiction-less, color of law private corporations, deceptively portraying themselves as "public servants."

30. Corporate officers/shareholders cannot legitimately be considered "public servant government employees."

31. Their allegiance lies with each other, rather than with the citizens.

32. Their primary concern is to maximize corporate profits for personal gain, rather than serving the interests of the people.

## D. ALL ALLEGED "GOVERNMENT EMPLOYEES" OPERATE UNDER COLOR OF LAW

Government impostors, including the Defendant(s) and other supreme judicial impostor(s) named in this case:

a.  Exploit their color of law jurisdiction-less positions to unlawfully violate fundamental sovereign, substantive laws through conflicting, self-serving man-made codes and decrees, depriving citizens of their unalienable birthrights.

b.  Employ civil procedural and corporate codes to create an illusion of legitimacy, masking criminal activities by presenting them as civil matters.

33. The Child Sale & Genocide-by-Guardian Crime Syndicate thrives by fraudulently depicting unalienable rights as governmental favors, constitutional or civil rights, privileges, or immunities. This charade aims to deceive citizens into believing they have control over their unalienable rights, while allowing for the legalization of crimes through fraudulent civil codes and tribunals that undermine sovereign and substantive laws.

34. Even if they were legitimate "public servants," not color of law private shareholders, they lack the jurisdiction, power, or authority to regulate, legislate, or adjudicate unalienable rights.

35. This deception creates an illusion of legitimacy, epitomizing the color of law.

36. The Defendant(s) and supreme judicial impostors engage in color of law crimes, using the guise of government to legitimize heinous acts.

37. Color of law crimes are egregious violations under sovereign, substantive law and carry severe punishments, including life imprisonment and the death sentence.

i.

a.  Actions with Respect to Threats to the Peace, Breaches of the Peace, and Acts of Aggression: https://www.un.org/securitycouncil/content/repertoire/actions

b.  United Nations Security Council Rome Statute of the International Criminal Court: https://www.un.org/securitycouncil/content/repertoire/actions

c.  OHCHR: https://www.ohchr.org/en/instruments-mechanisms/instruments/rome-statute-international-criminal-court

d.  What is R2P? - Global Centre for the Responsibility to Protect: https://www.globalr2p.org/what-is-r2p/

e.  Crime of Aggression: https://www.coalitionfortheicc.org/explore/icc-crimes/crime-aggression

f.  Coalition for the International Criminal Court: https://www.coalitionfortheicc.org/explore/icc-crimes/crime-aggression

g.  ii Nuremberg Laws | Holocaust Encyclopedia: https://encyclopedia.ushmm.org/content/en/article/nuremberg-laws

ii.

The Nuremberg Race Laws were two in a series of key decrees, legislative acts, and case law in the gradual process by which the Nazi leadership moved Germany from a democracy to a dictatorship.

iii.

a. by Cicero, a Roman philosopher & statesman as far back as the 1st century B.C.

b. by the 1776 Charter of We the People, the Declaration of Independence;

c. by Article I, Sec 8 of Constitution that prohibits "legislation" or "adjudication of our Unalienable Rights;

d. by other man-made codes including 18 U.S.C. 241 and 242:

e. by the 1948 U.N. Universal Declaration of Human Rights;

f. by affirmations by judicial employees in the U.S. Supreme and other Courts of Self-Evident Truths primarily by cases in the very early years of American history.

*These include:*

    a.   YICK WO v. HOPKINS , 118 U.S. 356 (1886): The very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the

enjoyment of life, at the mere will of another is intolerable in any country where freedom prevails, as being the essence of slavery itself."

b.    Marbury v Madison, 5th US (2 Cranch) 137, 174, 176 (1803): "All laws, rules and practices which are repugnant to the Constitution are null void." No courts are bound to uphold it, and no citizens are bound to obey it. It operates as a mere nullity or a fiction of law, which means it doesn't exist in law."

c.    Miranda v Arizona, 384 U.S. 436, 491: "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them. "

d.    Norton v. Shelby County, 118 U.S. 425 p. 442: "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed."

e.    16 Am Jur 2d., Sec. 177, 256: The general rule is that an unconstitutional statute, whether Federal or State, though having the form and name of the law is in reality no law, but is wholly void and ineffective for any purpose since unconstitutionality dates from the enactment and not merrily from the date of inception so braining it. An unconstitutional law in legal contemplation is as inoperative as if it had never been passed. Such a statute leaves a question that it purports to settle just as it would, had the statute not ever been enacted. No repeal of an enactment is necessary, since an unconstitutional law is void. The general principle follows that it imposes no duty, conveys no rights, creates no office, bestows no power of authority on anyone, affords no protection and justifies no acts performed under it. A contract which rests on an unconstitutional statute creates no obligation to be impaired by subsequent legislation. No one is bound to obey an unconstitutional law. No courts are bound to enforce it. Persons convicted and fined

under a statute subsequently held unconstitutional may recover the fines paid. A void act cannot be legally inconsistent with a valid one and an unconstitutional law cannot operate to supersede an existing valid law. Indeed, insofar as a statute runs counter to the fundamental law of the land, it is superseded thereby.

f.  Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958):  No state legislature or executive or judicial officer can war against the Constitution without violating his undertaking to support it. Lewis COLTEN, v. COMMONWEALTH OF KENTUCKY, 407 U.S. 104, (1972)

g.  Justice William O. Douglas dissenting:  "Since when have we Americans been expected to bow submissively to authority and speak with awe and reverence to those who represent us? The constitutional theory is that we the people are the sovereigns, the state and federal officials only our agents. We who have the final word can speak softly or angrily. We can seek to challenge and annoy, as we need not stay docile and quiet"

h.  *However, many of those cases deceptively portray our Unalienable Rights as "Constitutional" Rights.* Supreme Judicial Imposters who are now corporate shareholders use their positions to steal and deprive our Unalienable Rights in criminal conflict to the function of legitimate governments that are established to protect, defend and secure our Unalienable Rights. The Supreme Judicial Imposters have catapulted us backwards to an era of unenlightenment, lawlessness and slavery.


iv. U.S. v Williams 504 U.S. 36 (1992)

v. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 147 (1803) (citing 3 WILLIAM BLACKSTONE, COMMENTARIES *109).

1) **CLAIM:** The Claimant(s) in this case identify as *Enfranchised Living Souls,* moving in common law. They have not agreed to be RE-presented by any affiliate of the Bar Organization or other related schemes. However, the STATE has come against the Claimant(s) and their offspring by specifically mentioning them as dead entities, all while masquerading federal crimes against their families as "Civil Matters" in family court. To be clear, the Claimant(s) are *not* dead entities or corporations in which this STATE has fabricated by spelling their names in all capital letters, unbeknownst to them. The Claimant(s) hereby declare that they are not contracted with the "FCCE," *FAMILY COURT CRIMINAL ENTERPRISE.* Therefore, any and all *CHILD TRAFFICKING, HUMAN TRAFFICKING, LOOTING AND GENOCIDE CONTRACTS,* associated with the Claimant(s), were falsified by GOVERNMENT IMPOSTERS within the STATE and are inherently void on their face and hereby formally nullified.

2) Let it be known that the Claimant(s) are fully *conscious* of their natural, God given rights and privileges. Their roots tie back to the Natural Laws of the land, which God has ordained on all *living souls.* These inherent rights are not granted to *We the People* by a black robe. Therefore, the Claimant(s) present this Claim which encompasses violations of the Civil Rights Act of 1871 (42 U.S.C. §§ 1983, 1985, 1986), Racketeering and Corrupt Organizations Act of 1970 (18 U.S.C. § 1962), False Advertising (15 U.S.C. § 1125), Intentional Infliction of Emotional Distress, Tortious Interference with Parental Rights, Defamation, Negligence, Interference with Custody Proceedings, Malicious False

Reporting, Unlawful Notarization, Unlawful Interception of Communications, Conspiracy to Commit Fraud, and Invasions of Privacy.

3) Therefore, due to the Defendant(s)' bold acts of defying State and Federal authority, the Claimant(s) are seeking federal jurisdiction under 28 U.S.C. § 1331 and a trial by jury, invoking the rights granted to them by the Seventh Amendment.

4) Furthermore, the Claimant(s) requested a Declaratory Judgment (28 U.S.C. § 2201) and a Motion for Harassment Protective Order (18 U.S.C. § 1514(B)).

5) The purpose of this case is to hold the Defendant(s) accountable for their illegal behavior and to recover damages for the harm caused. Lastly, the Claimant(s) seek declaratory and injunctive relief to prevent further harm, as well as compensatory and punitive damages to impose penalties on the Defendant(s) and dissuade them from engaging in similar activities in the future.

6) State Violations: The Claimant(s) bring this action against the Defendant(s) for deliberately committing/ attempting to commit numerous criminal offenses and dangerous felonies against them and their offspring during ongoing custody proceedings, which include but are not limited to kidnapping (RSMo. § 565.110), premeditated murder (RSMo. § 565.021), assault in the first degree (RSMo. § 565.050), assault in the fourth degree (RSMo. § 565.056), endangering the welfare of a child in the first degree (RSMo. § 568.045), criminal negligence (RSMo. § 556.061), criminal medical malpractice (RSMo. § 516.105), trespass in the first degree (RSMo. § 569.140), property damage in the first degree (RSMo. § 569.100), property damage in the second degree (RSMo. § 569.120),  burglary in the first degree (RSMo. § 569.160), burglary in the second degree (RSMo. § 569.170), stealing (RSMo. § 570.030(7)), stalking (RSMo. § 565.225), aiding

and abetting (RSMo. § 259.200(3)), misconduct in administration of justice (RSMo. § 575.320(2)), obstructing government operations (RSMo. § 576.030), racketeering (RSMo. § 337.035(4)(5)(14)(15)), defamation (RSMo. § 509.210), false reporting (RSMo. § 575.080), perjury (MO Rev Stat § 492.060), violating their oaths of office (RSMo. § 23.156), maintaining conflicts of interest (Missouri Rule 4-1.7), and illegally detaining/ attempting to detain the Claimant(s).

7)  Therefore, due to these deliberate crimes committed against the Claimant(s), these individuals are now in breach of MO Const art I § 1, MO Const art I § 2, MO Const art I § 3, MO Const art I § 4, MO Const art I § 5, MO Const art I § 8, MO Const art I § 9, MO Const art I § 10, MO Const art I § 13, MO Const art I § 14, MO Const art I § 15, MO Const art I § 16, MO Const art I § 30, MO Const art I § 31, MO Const art I § 32, as well as the First, Fourth, Fifth, Seventh, Eighth, Ninth, Thirteenth, and Fourteeth Federal Amendments.

8)  Federal Violations: The Claimant(s) have significant evidence to support a reasonable belief that numerous crimes have been committed against them and their offspring including intentional violations of Federal Codes such as U.S. Constitution art 6 § 2; The Supremacy Clause, 18 U.S.C. § 241; Conspiracy against rights, and 18 U.S.C. § 242; Deprivation of rights under color of law.

9)  Furthermore, The Claimant(s) possess substantial evidence to support the claim of multiple prosecutable crimes having been committed against them and their offspring, including but not limited to at least one deliberate breach of each of the following Federal Codes.

   A.  18 U.S.C. § 2–Principals

B.  18U.S.C. § 3–Accessory after the fact

C.  18 U.S.C. § 246–Deprivation of relief benefits

D.  18 U.S.C. § 371–Conspiracy to commit offense or to defraud United States

E.  18 U.S.C. § 403–Protection of the privacy of child victims and child witnesses

F.  18 U.S.C. § 514 – Fictitious obligations

G.  18 U.S.C. § 641–Public money, property, or records

H.  18 U.S.C. § 666–Theft or bribery concerning programs receiving Federal funds

I.  18 U.S.C. § 875–Interstate communications

J.  18 U.S.C. § 876–Mailing threatening communications

K.  18 U.S.C. § 880–Receiving the proceeds of extortion

L.  18 U.S.C. § 1001–Statements or entries generally

M.  18 U.S.C. § 1002–Possession of false papers to defraud the United States

N.  18 U.S.C. § 1018 Official certificates or writings

O.  18 U.S.C. § 1035–False statements relating to health care matters

P.  18 U.S.C. § 1203–Hostage taking

Q.  18 U.S.C. § 1341–Frauds and swindles

R.  18 U.S.C. § 1344 – Bank fraud

S.  18 U.S.C. § 1346–Definition of "scheme or artifice to defraud"

T.  18 U.S.C. § 1347–Healthcare fraud

U.  18 U.S.C. § 1349–Attempt and conspiracy

V.  18 U.S.C. § 1505–Obstruction of proceedings before departments, agencies, and committees

W.  18 U.S.C. §1512–Tampering with a witness, victim, or informant

X.  18 U.S.C. §1519–Destruction, alteration, or falsification of records

Y.  18 U.S.C. §1621–Perjury generally

Z.  18 U.S.C. §1622–Subornation of perjury

AA.    18 U.S.C. §1951–Interference with commerce by threat or violence

BB.    18 U.S.C. §1952–Interstate and foreign travel; in aid of racketeering

        enterprises

CC.    18 U.S.C. Chapter 96–Racketeer influenced and corrupt organization

DD.    18 U.S.C. § 2071–Concealment, removal, or mutilation generally (of records

        and reports)

EE. 18 U.S.C. § 2075–Officer failing to make returns or reports

FF.  18 U.S.C. § 2315–Sale or receipt of stolen goods, money, or fraudulent State tax

        stamps

GG.    18 U.S.C. § 3052–Powers of Federal Bureau of Investigation

HH.    18 U.S.C. § 3061–Investigative powers of Postal Service personnel

II.  18 U.S.C. § 3509–Child victims' and child witnesses' rights

JJ.  28 U.S.C. § 535–Investigation of crimes involving Government officers and

        employees

KK.    28 U.S.C. § 547–Duties

LL. 18 U.S.C. § 246 – Deprivation of relief benefits

MM.    28 U.S.C. § 535 – Investigation of crimes involving Government officers and

        employees.

NN.    42 U.S.C. § 1983- Excessive force

10) In addition, each of these judicial officials intentionally, and repeatedly, violated their

oaths of office, several Missouri statutes, and the United States Supreme Court Canons:

    A. Canon 1: A judge shall uphold the integrity and independence of the judiciary.

    B. Canon 2: A judge shall avoid impropriety and the appearance of impropriety in all the judge's activities.

    C. Canon 3: A judge shall perform the duties of judicial office impartially and diligently.

    D. Canon 4: A judge shall so conduct the judge's quasi-judicial and extra-judicial activities as to minimize the risk of conflict with judicial obligations.

    E. Canon 6: Compliance with the code of judicial ethics.

11) The individuals who hold the positions of trust for the care of offspring are considered "mandatory reporters," and were directly or indirectly involved in child abuse or knew about the abuses but failed to report them, are intentionally violating one or more of the following federal codes:

    A. 42 U.S.C. § 5101–Office on Child Abuse and Neglect

    B. 42 U.S.C. § 10406–Discrimination prohibited

    C. 42 U.S.C. § 10410–Grants for State domestic violence coalitions

    D. 42 U.S.C. § 10420–Safe havens for offspring

    E. 42 U.S.C. § 10602–Crime victim compensation

    F. 42 U.S.C. § 10603–Crime victim assistance

    G. 42 U.S.C. § 10604–Administrative provisions (discrimination prohibited)

    H. 42 U.S.C. § 10607–Services to victims

    I. 42 U.S.C. § 12301/12371–Findings (about offspring  and families)

    J. 42 U.S.C. § 13001–Findings

K.  42 U.S.C. § 13012–Purpose (Court-appointed Special Advocate (Volunteers))

L.  42 U.S.C. § 13021–Findings and purpose

M.  42 U.S.C. § 13022 –Grants for juvenile and family court personnel

N.  42 U.S.C. § 13031–Child abuse reporting

12) The following agencies have willfully refused to conduct a full investigation of the trafficking of the Claimant(s)' offspring despite detailed reports and multiple follow up calls and/or emails from the Claimant(s).

A.  The White House, President Joe Biden (Defendant)

B.  Health and Human Services of the United States (Defendant)

C.  The Department of Social Services (Defendant)

D.  Homeland Security (Defendant)

E.  Federal Bureau of Investigation (Defendant)

F.  The Bar Association (Defendant)

G.  Internal Affairs Division (Defendant)

H.   Attorney General's Office (Defendant)

## III. STATEMENT REGARDING ORAL ARGUMENTS & RESERVATION OF RIGHTS

1)  As of today no oral arguments have taken place in this case. The parties involved have not presented their arguments or engaged in oral discussions before the court. Should oral arguments be scheduled in the future, the parties will adhere to the court's guidelines and procedures for presenting their respective positions and addressing the issues at hand. Until that time, the case remains in the pre-argument stage, and the parties are prepared to present their arguments when called upon by the court.

2) ALL EXHIBIT(S) ARE TO BE WITHHELD UNTIL FURTHER NOTICE.

*Reservation of Rights due to Fraudulent Conduct*

3) The Claimant(s) herein preserve their inherent rights to modify the instant and subsequent pleadings if future discoveries or events uncover the Defendant's, state court's, and other named or unnamed parties' deception and false conduct leading to an incomplete understanding of the extent of the damages caused. The Claimant(s) rely on Rules 8, 15, and 18 of the Federal Rules of Civil Procedure to support this reservation of rights.

## IV. ASSERTION OF JURISDICTION & VENUE

In this legal proceeding, the Claimant(s) affirm the following jurisdictional authorities:

1. RICO Jurisdiction (18 U.S.C. § 1964(a), (b), (c), and (d)): The RICO Act expressly grants civil remedies and confers jurisdiction upon district courts for cases involving racketeering violations.

2. THE GEORGIA RICO ACT: O.C.G.A. § 16-14-1 et seq.

3. Declaratory Judgment Act (28 U.S.C. § 2201-2202): The Claimant(s) seek declaratory judgments of their rights under federal law, including the R.I.C.O. Act, as a preventative measure to address potential disputes before they escalate into full-blown controversies.

4. 42 U.S.C. § 1983: This statute empowers individuals to litigate against state or local government officials, as well as individuals acting under state law, for violations of their inherent rights.

5. 42 U.S.C. §1985: Addressing conspiracies aimed at violating fundamental rights, this statute provides legal recourse for individuals targeted by discriminatory conspiracies motivated by bias.

6.  The selection of this district as the venue is deemed appropriate under 28 U.S.C. § 1391(b), as a substantial portion of the events, omissions, and resulting harm unfolded within its boundaries. Key Defendant(s), including judicial officers and state actors, either reside or are situated here. The interests of justice and convenience overwhelmingly support this venue.

7.  Federal Question Jurisdiction:

    a.  Federal Question Jurisdiction (28 U.S.C. § 1331): This civil lawsuit is grounded in the Constitution, federal laws, and treaties of the United States, with a specific focus on the Racketeer Influenced and Corrupt Organizations (RICO) Act and related federal statutes.

    b.  Federal question jurisdiction specifically grants the District Court's original jurisdiction to hear cases that arise from the U.S. Constitution, federal statutes, or treaties. As an Article III court, the District Court of the United States is empowered to hear cases related to the Constitution, laws, and treaties of the United States, including but not limited to the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights. This jurisdiction is grounded in the Article VI Supremacy Clause of the U.S. Constitution, which has been lawfully amended.

    c.  The allegations asserted by the Claimant(s) arise under Federal law, including but not limited to the United States Constitution and Federal statutes. The Claimant(s)' allegations of violations of Constitutional rights, criminal abuse of

power, and participation in an alleged financial fraud scheme invoke the jurisdiction of this Court under 28 U.S.C. § 1331, which grants jurisdiction over civil actions arising under Federal law and 28 U.S.C. 2241, which provides federal courts habeas jurisdiction.

8.  Supplemental Jurisdiction:

    a.  Supplemental Jurisdiction (28 U.S.C. § 1367(a)): The court maintains supplemental jurisdiction over state law claims closely intertwined with the federal R.I.C.O. claims within the same case or controversy.

    b.  This Court can exercise supplemental jurisdiction over related state law claims as provided under 28 U.S.C. § 1367. The Claimant(s) assert issues such as custody arrangements, familial rights, and alleged violations of state regulations. The supplemental jurisdiction of this Court extends to such state law claims that are part of the same case or controversy arising from the same nucleus of operative facts as the federal claims.

    c.  Under 28 U.S.C. 1331, 28 U.S.C. 1367, 42 U.S.C. 1983 and 1985, the District Court of the United States is vested with original, concurrent, and supplemental jurisdiction to adjudicate cases that arise from Federal Statutes, the U.S. Constitution, or treaties.

9.  Record of State Proceedings:

    a.  It is the Claimant(s)' expectation that this esteemed court shall acquire access to the record of the State Court proceedings when presented with a Notice and Demand for Mandatory Judicial Notice. This expectation is based on Rules 201

and 902 of the Federal Rules of Evidence, the Full Faith and Credit Clause in

Article IV of the U.S. Constitution, and 28 U.S.C. § 1449.

4. Incorporation of Prior Pleadings:

    a.  The Claimant(s) adopt by reference all pleadings, papers, and effects submitted or

        lodged within the state proceedings.

## V.  ELEMENTS COMMON TO ALL CIVIL R.I.C.O. ACTIONS

1.  In this civil R.I.C.O. action, the Defendant(s), entangled in the Family Court Criminal

    Enterprise (FCCE), are accused of systematically eroding parental rights, perpetuating

    grave injustices, and exploiting vulnerable families for personal gain. Their alleged

    crimes span mail fraud, wire fraud, money laundering, bribery, extortion, obstruction of

    justice, witness tampering, and the reprehensible trafficking of minors. According to the

    Claimant(s), the Defendant(s)' entrenched corruption has metamorphosed the family

    court system into a criminal enterprise.

2.  Allegations Against the Defendant(s): The Defendant(s) are accused of employing illicit

    tactics, including intimidation, collusion, and procedural manipulation, to suppress

    evidence of abuse, neglect children's welfare, and manipulate custody outcomes to favor

    alleged perpetrators aligned with the enterprise's interests. This civil R.I.C.O. action

    seeks to address the severe harm inflicted by the FCCE's alleged racketeering schemes.

3.  Victims of Unlawful Conduct: The Claimant(s) and their offspring assert direct

    victimization by the Defendant(s)' actions. Despite the Claimant(s)' credible allegations

    of  abuse on the other parties, it is alleged that presiding Judge(s) disregarded evidence,

    intimidated the Claimant(s), and engaged in flagrant due process violations – purportedly

to protect The Family Annihilation Enterprise(s) in this case as well as the FCCE's interests.

4.  RICO Elements: To substantiate a civil claim under RICO, the Claimant(s) must demonstrate that the FCCE qualifies as an "enterprise" under RICO, that the Defendant(s) were associated with it, that they participated in its affairs through a pattern of racketeering activity, and that these activities affected interstate commerce.

5.  The Defendant(s)' Roles and Predicate Acts: This Claim alleges that the Defendant(s) participated in the FCCE's enterprises through a pattern of racketeering activity, including mail fraud, wire fraud, money laundering, bribery, extortion, obstruction of justice, witness tampering, and trafficking of minors. These predicate acts demonstrate the Defendant(s)' involvement in managing the FCCE's criminal activities.

6.  Impact on Interstate Commerce: The FCCE and its subsidiaries' racketeering activities had a direct effect on interstate commerce through the use of mail, wires, interstate financial transactions, and other means spanning state lines. Furthermore, the enterprises sought to control and derive profits from the multi-billion dollar family law industry, which inherently affects interstate commerce.

7.  Seeking Legal Recourse: By establishing these elements, the Claimant(s) aim to prove that the Defendant(s) conducted an unlawful criminal enterprise affecting interstate commerce through a pattern of racketeering activity. This entitles the Claimant(s) to RICO's treble damages, injunctive relief, and other remedies under 18 U.S.C. § 1964.

8.  Relationships and Common Purpose Among Enterprises: The FCCE serves as the overarching criminal organization, with subsidiaries including the Kids 4 Cash/Gal Enterprise, The Family Annihilation Enterprise(s), the WHISTLEBLOWER Enterprise,

and State Enterprise. These enterprises operated symbiotically, exploiting the family

court system, controlling custody outcomes, silencing dissent, and prioritizing accused

abusers' interests over the youths' safety. The FCCE provided the framework for

criminality, while its subsidiaries executed illegal activities, coordinated efforts, and

insulated themselves from scrutiny. This symbiotic relationship allowed the enterprises to

combine resources and operate as a united criminal front.

## VI.  RELATIONSHIPS AND COMMON PURPOSE AMONG ENTERPRISES

1.  The Family Court Criminal Enterprise (FCCE) stands as the central hub of this web of
    criminal activity, with subsidiaries such as the KIDS 4 CASH/GAL Enterprise, The
    Family Annihilation Enterprise(s), the Whistleblower Enterprise, and Blue Code
    Enterprise operating under its pervasive influence.

2.  Interconnected Enterprises: Within this intricate network, the Kids 4 Cash/Gal Enterprise
    operates directly under the umbrella of the FCCE. Its members, including
    court-appointed guardians, attorneys, and professionals, wielded their authority to
    manipulate cases, traffic minors, conceal evidence, and prioritize their financial interests
    over the welfare of children, all while shielded by the broader criminal conspiracy.

3.  Beneficiaries of Corruption: The Family Annihilation Enterprise(s) in this case reaped the
    benefits of the FCCE's corruption, collaborating with the Kids 4 Cash/Gal Enterprise and
    WHISTLEBLOWER Enterprise to secure favorable custody outcomes for the
    Defendant(s) and maintain control over the minor offspring, shielding the alleged abuser
    from accountability.

4.  Targets of Retaliation: The Whistleblower Enterprise took aim at individuals like the

Claimant(s) and many more leveraging the systemic influence of the FCCE to silence dissent through intimidation, abuse of process, and deprivation of rights after exposing the enterprises' misconduct.

5. Complicit Government Entities: The State Enterprise, composed of government agencies, allegedly turned a blind eye to the FCCE's operations, failing to investigate credible reports of systemic abuse and criminality. This willful indifference empowered the conspiracy to continue unabated.

6. Unified Objectives: Despite their distinct roles, each subsidiary enterprise shared a common purpose in line with the FCCE's objectives:

a) Exploiting the family court system for personal and enterprise enrichment through fraudulent billing, bribery, and other illicit financial schemes.

b) Exerting control over custody outcomes by undermining parental rights, suppressing evidence of abuse, and funneling the youth to accused perpetrators allied with the enterprises.

c) Suppressing dissent by intimidating whistleblowers, victims, and those seeking to expose or challenge the corruption through harassment, retaliation, and deprivation of rights.

d) Prioritizing the interests of accused abusers over the safety, well-being, and constitutional protections of children and families.

7. Symbiotic Relationship: The FCCE provided the overarching framework for criminality, while its subsidiaries facilitated the execution of illegal activities. This symbiotic relationship allowed the enterprises to combine resources, coordinate illicit endeavors, and shield themselves from external scrutiny, presenting a united front in their pursuit of unlawful gain.

## VII.  DEFENDANTS AND THEIR ALLEGED ROLES

1) The Defendant(s) implicated in this RICO action form a network of individuals and entities allegedly involved in the Family Court Criminal Enterprise (FCCE) and its associated criminal entities. Their purported roles in advancing the racketeering conspiracy are detailed as follows:

2) Defendant President Joe Biden (An Individual):

3) **Presidential Immunity:** The President of the United States enjoys immunity from civil lawsuits for actions taken while in office that fall within the scope of his official duties. This was established in the landmark Supreme Court case *Nixon v. Fitzgerald* (1982).

a. **Exceptions:** There are limited exceptions. For example, the Supreme Court ruled in *Clinton v. Jones* (1997) that a sitting President could be sued for actions taken before he assumed office or for conduct unrelated to his official duties.

4) ***Clinton v. Jones*** **(1997):** Paula Corbin Jones sued President Bill Clinton. She alleged that while she was an Arkansas state employee, she suffered several "abhorrent" sexual advances from then Arkansas Governor Clinton. Jones claimed that her continued rejection of Clinton's advances ultimately resulted in punishment by her state supervisors. Following a District Court's grant of Clinton's request that all matters relating to the suit be suspended, pending a ruling on his prior request to have the suit dismissed on grounds of presidential immunity, Clinton sought to invoke his immunity to completely dismiss the Jones suit against him. While the District Judge denied Clinton's immunity request, the judge ordered the stay of any trial in the matter until after Clinton's Presidency. On appeal, the Eighth Circuit affirmed the dismissal denial but reversed the trial deferment

ruling since it would be a "functional equivalent" to an unlawful grant of temporary presidential immunity.

5) **Question:** Is a serving President, for separation of powers reasons, entitled to absolute immunity from civil litigation arising out of events which transpired prior to his taking office?

6) **Conclusion:**



7) ***No***. In a unanimous opinion, the Court held that the Constitution does not grant a sitting President immunity from civil litigation except under highly unusual circumstances. After noting the great respect and dignity owed to the Executive office, the Court held that neither separation of powers nor the need for confidentiality of high-level information can justify an unqualified Presidential immunity from judicial process. While the independence of our government's branches must be protected under the doctrine of separation of powers, the Constitution does not prohibit these branches from exercising any control over one another. This, the Court added, is true despite the procedural burdens which Article III jurisdiction may impose on the time, attention, and resources of the Chief Executive

i.

"Clinton v. Jones." *Oyez,* www.oyez.org/cases/1996/95-1853. Accessed 4 Jun. 2024

8) **CLAIM:** *We the People* are holding Defendant Joe Biden criminally and civilly liable for the VOID child trafficking and genocide services, codes, bills, and policies enacted by his administration.

9) The issue of the approximately 2,000 missing immigrant children, under Defendant Biden's watch has become a significant point of concern and criticism. These children, unaccompanied minors from countries such as Honduras, El Salvador, and Guatemala, were placed in the care of sponsors by the Defendant Department of Health and Human Services (HHS). Following standard procedure, HHS conducted follow-up calls to check on these children but was unable to reach about 2,000 of them, raising fears that they might have fallen through the cracks of the system (WORLD) (Voice of America).

10) Critics argue that the process for vetting and monitoring sponsors is insufficient, leading to concerns that some children may be exploited or mistreated. The speed at which children are placed with sponsors, often due to the high numbers of arrivals and limited detention space, exacerbates the problem. In some cases, children have been placed with sponsors who already have multiple children in their care, raising red flags about their capacity to provide proper supervision and care. Additionally, reports have surfaced of children ending up in exploitative labor situations, which underscores the urgent need for more rigorous follow-up and oversight (WORLD).

11) The Biden administration has faced significant backlash over this issue, with calls for stronger protections and better tracking mechanisms for unaccompanied minors. While HHS has proposed new regulations to enhance the safety and services for these children,

there are concerns about the adequacy and enforcement of these measures. The

administration's handling of this crisis reflects broader challenges within the U.S.

immigration system, including the need for comprehensive reform to ensure the

well-being and security of vulnerable children entering the country alone (WORLD)

(Voice of America).

ii.

https://www.voanews.com/a/with-or-without-parents-missing-immigrant-children/4415174.html

iii.

https://wng.org/roundups/are-thousands-of-immigrant-children-missing-in-the-united-states-170
4923254

12) The "Kids for Cash" scandal involving former judges Mark Ciavarella and Michael

Conahan in Pennsylvania represents one of the most egregious abuses of judicial power

in U.S. history. These judges accepted millions in kickbacks from the operators of private

juvenile detention centers in exchange for sentencing thousands of children to

incarceration for minor offenses, often without due process. Their actions destroyed

countless lives and led to the Pennsylvania Supreme Court overturning approximately

4,000 juvenile convictions.

13) This scandal underscores the dangers of corruption and exploitation within the judicial

system, raising concerns about the potential for similar abuses in family courts, especially

under the negligent oversight of Defendant Biden. In an environment where

accountability is lacking, the Claimant(s) argue that under Defendant Joe Biden's administration, there is a heightened risk that state imposters or corrupt officials could exploit vulnerable populations, including children in the family court system. The parallels with the "Kids for Cash" scandal taking place in this city, highlights the devastating impact such negligence can have on families and children, emphasizing the need for stringent oversight and accountability in all judicial processes.

14) Moreover, the ongoing concerns about missing immigrant children during Defendant Biden's presidency draw uncomfortable comparisons to the "Kids for Cash" scandal(s). The failure to adequately track and protect these children not only puts them at risk of exploitation but also echoes the systemic failures that allowed for-profit entities to profit from the suffering of minors by denying families of their Due Process Rights. Both scenarios illustrate how vulnerable children can be manipulated and harmed by those in positions of authority when proper safeguards are not in place.

iv.

https://www.wnep.com/article/news/local/luzerne-county/how-the-decision-in-kids-for-cash-scandal-sends-a-message-mark-ciavarella-and-michael-conahan/523-63f6d6f0-5fa3-4a5a-93e8-36152bd9e43b

v.

https://www.prisonlegalnews.org/news/2011/nov/15/former-judges-in-cash-for-kids-scandal-sentenced/

15) **NEGLIGENCE AND IRREPARABLE HARM:** Criticism of Defendant Joe Biden often centers on his handling of the economy, including issues like inflation and the national deficit. Despite some improvements, inflation remains a significant concern, with many Americans feeling the pinch of high prices for everyday goods. The national deficit has also increased under Defendant Biden, partly due to pandemic-related spending, such as the American Rescue Plan. While the deficit has been reduced from its pandemic peak, it remains higher than in pre-pandemic years, contributing to ongoing economic dissatisfaction (Politifact) (POLITICO).

16) Moreover, Defendant Biden implaced Covid mandates, which were abused by the Defendant(s) in this case, to traffic the Claimant(s)' offspring. All agencies under Defendant Biden's watch refused to engage in the human trafficking of the Claimant(s)' offspring.

17) As a result of the mass human trafficking highly recognized by *We the People*, public confidence in Defendant Biden's ability to manage key issues has seen a notable decline. Polls show that fewer Americans trust his economic policies, his approach to immigration, and his ability to handle international crises effectively. For example, confidence in his economic decision-making and ability to manage immigration has dropped significantly since 2022. Additionally, many voters are concerned about his age and cognitive abilities, further eroding their trust in his leadership. This lack of confidence is reflected in his low approval ratings, which have remained stubbornly low, causing concern among Democrats as the 2024 election approaches.

vi.

https://www.pewresearch.org/politics/2023/04/07/assessments-of-biden-and-his-administration/

18) WHEREFORE, *We the People* humbly request this court hold Defendant Biden civilly and criminally liable, in his individual capacity, for treason and kidnapping under Section 242 of Title 18, seeing as his heinous conduct falls outside the scope of his official duties.

19) Attorneys: A multitude of attorneys from various prominent law firms across this state are named as Defendant(s), accused of actively engaging in the racketeering schemes orchestrated by the FCCE. These legal professionals, including the Defendant Attorneys and many others, allegedly employed fraudulent tactics, bribery, and extortion to manipulate case outcomes for personal and collective financial gain. By leveraging their positions of trust, these attorneys are said to have facilitated FCCE's operations within the judicial system, perpetuating its illicit activities.

20) Guardians Ad Litem: Court-appointed guardians ad litem (GALs) are portrayed as key actors in the racketeering schemes, particularly within the Kids 4 Cash/Gal subsidiary enterprise. These GALs are accused of abusing their authority by facilitating the trafficking of minors, concealing evidence of abuse, falsifying reports, and unduly influencing custody decisions—all to further the interests of the FCCE and enrich themselves, in violation of their ethical and legal obligations.

21) Judges: Defendant Judges entrusted with ensuring impartial justice, are alleged to have actively furthered the corrupt operations of the FCCE from within the judiciary. These individuals and many others are accused of biased rulings that ignore evidence of abuse, favor custody decisions benefiting alleged abusers aligned with the enterprise, and undermine due process. Moreover, they are accused of intimidating and retaliating against victims and safeguarding the interests of the FCCE over the welfare of families

and their offspring.

22) State Agencies and Officials: Various state government bodies and officials are implicated in perpetuating the racketeering schemes of the FCCE through their failure to investigate, intervene, and enforce laws against the criminal enterprise. This includes entities such as the Attorney General's Office and the Department of Social Services, which allegedly turned a blind eye to mounting evidence of corruption and abuse within the family court system, thereby enabling the enterprise to operate with impunity.

23) Other Professionals: The conspiracy extends to court-appointed professionals such as psychologists, therapists, and social workers, with Defendants accused of providing biased reports and testimony to advance the objectives of the FCCE. Their actions are alleged to have lent credibility to the enterprise's false narratives, concealed abuse, and facilitated the unlawful deprivation of parental rights.

24) Through the collaboration of corrupt judges, attorneys, guardians, and other professionals within the family court system, the FCCE purportedly inflicted extensive harm on numerous victims, including the Claimant(s).

## VIII.  JUDGES

1) Judges within this state entrusted with impartially upholding justice became conduits for the FCCE's corrupt operations. Defendant Judges are accused in this Claim of abusing their authority. They made biased rulings, disregarded evidence of abuse, granted favorable custody decisions to alleged abusers aligned with the enterprise, undermined due process, silenced victims through intimidation and retaliation, and actively protected the FCCE's interests over the well-being of families and their offspring.

2) Examples: a) Defendant Judge Bruce F. Hilton, a "Boss" within the MO- FCCE, located

at 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 63105, has removed the Claimant(s)' offspring without due process, constituting kidnapping. Defendant Judge Hilton is even known for his heinous acts of denying due process as a criminal judge, ordering the death penalty on innocent civilians without the burden of proof  (i)

https://amp.cnn.com/cnn/2024/09/23/us/marcellus-williams-missouri-supreme-court-hearing (ii)

https://www.usatoday.com/story/news/nation/2024/09/24/missouri-execution-marcellus-williams-lisha-gayle/75298897007/

b) Defendant Judge Mary Greaves has removed custody from BERNADINE D'ORVILLE PRUESSNER without the burden of proof which has lead to the mysterious circumstances surrounding the "murder- suicide" of her and her offspring. Mary Greaves and Robert M. Heggie, both "Bosses" within the MO- FCCE, located at 21st Judicial Court, Saint Louis County Family Court, 105 S Central Ave. Clayton, MO 6310, filed an Order of Dismissal.

3) State Agencies and Officials: This Claim further implicates various state government bodies and officials in perpetuating the FCCE's racketeering schemes through their failure to properly investigate, intervene, and enforce laws against the criminal enterprise. This includes the Attorney General's Office, Department of Social Services, and other agencies accused of turning a blind eye to mounting evidence of corruption, abuse, and human trafficking. Their alleged willful indifference and deliberate inaction provided cover for the FCCE's unlawful activities to continue unchecked, essentially enabling the perpetuation of injustice against vulnerable families like the Claimant(s).

4) Within the 21st Circuit family law division, judges entrusted with impartially upholding justice allegedly became conduits for the MO-FCCE's corrupt operations. Judges like Judge Jason Dodson,  John R. Lasater, Nicole Zellweger, Joseph L. Green, Robert Heggie, and others are accused in this Claim of abusing their authority. They allegedly made biased rulings, disregarded evidence of abuse, granted favorable custody decisions to alleged abusers aligned with the enterprise, undermined due process, silenced victims through intimidation and retaliation, and actively protected the MO-FCCE's interests over the well-being of families and their offspring.

1) State Agencies and Officials: This Claim further implicates various Missouri state government bodies and officials in perpetuating the MO-FCCE's racketeering schemes through their failure to properly investigate, intervene, and enforce laws against the criminal enterprise. This includes the Missouri Attorney General's Office, Department of Social Services, and other agencies accused of turning a blind eye to mounting evidence of corruption, abuse, and human trafficking. Their alleged willful indifference and deliberate inaction provided cover for the MO-FCCE's unlawful activities to continue unchecked, essentially enabling the perpetuation of injustice against vulnerable families like the Claimant(s).

2) Due to the Predicate Offenses outlined by the Judge Defendant(s) in this case, the following *LEADERS* have been identified within the *Judicial Racket Enterprise* which make up the MO- FCCE, an organized gang with a common purpose.

3) *THE "BOSSES"*

a. Judge John R. Lasater - 21st Judicial Court, Saint Louis County Family Court, Division 15

b.  Judge Julia Pusateri Lasater- Circuit Judge, 105 South Central Avenue, Clayton, MO

c.  Judge Nicole Zellweger - Circuit Judge, 105 South Central Avenue, Clayton, MO

d.  Judge Robert M. Heggie - 21st Judicial Court, Saint Louis County Family Court, Division 42

e.  Judge Mary E. Ott - 21st Judicial Court, Saint Louis County Family Court, Division 7

f.  Judge Jeffrey Paul Medler - Circuit Judge, 105 South Central Avenue, Clayton, MO

g.  Judge Matthew Hill Hearne - Circuit Judge, 105 South Central Avenue, Clayton, MO

h.  Judge Bruce F. Hilton- Circuit Judge, 105 South Central Avenue, Clayton, MO

i.  Judge Amanda Bundren McNelley - Circuit Judge, 105 South Central Avenue, Clayton, MO

j.  Judge Matthew Hill Hearne - Circuit Judge, 105 South Central Avenue, Clayton, MO

k.  Judge Kurt S. Odenwald - Appeals Court Judge, Division 2, Missouri Court of Appeals Eastern District

l.  Judge Michael E. Gardner - Appeals Court Judge, Division 2, Missouri Court of Appeals Eastern District

m.  Judge Renee Hardin-Tammons - Appeals Court Judge, Division 2, Missouri Court of Appeals Eastern District

n.  Judge Sandra Faragut Hemphill - Circuit Judge, Division 3, 105 South Central Avenue, Clayton, MO

o.  Judge John Borbonus - Circuit Civil and Criminal Court Judge, Division 6, 105 South Central Avenue, Clayton, MO

p.  Judge Jason D. Dodson - Family Court Administrative Judge, Division 10, 105 South Central Avenue, Clayton, MO

q.  Judge Mary W. Greaves - Circuit Judge, 105 South Central Avenue, Clayton, MO

r.  Judge Patricia Ann Riehl - Former Judge, 23rd district, 500 North Broadway, Suite 1800, St. Louis, MO

s.  Judge Dale W. Hood - Circuit Judge, 105 South Central Avenue, Clayton, MO

t.  Judge Joseph L. Green - Circuit Judge, 105 South Central Avenue, Clayton, MO

u.  Judge Megan Julian Higgins - Circuit Judge, 105 South Central Avenue, Clayton, MO

v.  Judge Diane Monahan - Family Court Commissioner, 105 S. Central Ave., Clayton, MO

w.  Judge Scott Bernstein - 42nd Circuit Court in Crawford County, Missouri

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

The Federal Court Judge Defendant(s) acting in conjunction with "The Circuit Court Bosses":

**"The Federal Court Bosses,"** are identified as

a.  District Judge Matthew T. Schelp,

b.  District Judge Henry Edward Autrey,

c.  District Judge Stephen R. Clark,

d.  District Judge Rodney W. Sippel,

e.  District Judge John M. Bodenhausen,

f.  District Judge Judge Sarah E. Pitlyk,

g.  And potentially others within the UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

4)  MISSOURI EASTERN DISTRICT COURT OF APPEALS . The Appeals Court Judge Defendant(s) acting in conjunction with "The Circuit Court Bosses":

a)  Kurt S. Odenwald,

b) Michael E. Gardner,

c) Renee Hardin- Tammons,

d) and potentially others within the Missouri Eastern District Court of Appeals.

5) THE SUPREME COURT OF MISSOURI. The Supreme Court Judge Defendant(s) acting in conjunction with "The Circuit Court Bosses":

a) Mary R. Russell (Chief Justice)

b) Betsy Ledgerwood (Clerk of the Court)

c) and potentially others within the Supreme Court of Missouri.

5) **"THE FAMILY ANNIHILATION ENTERPRISE CONTROVERSY**:" By failing to disclose the trust account, the Defendant(s) attorney(s) have committed multiple violations of the Missouri Rules of Professional Conduct, including:

a) Rule 1.4- Communication; by failing to properly communicate with the Claimant,

b) Rule 1.15- Safekeeping Property; by depositing my funds into a trust without consent

c) Other Professionals: The conspiracy extended to court-appointed professionals such as psychologists, therapists, parenting coordinators, and social workers. The Defendant(s) in this case are being accused of providing biased and fraudulent reports, testimony, and recommendations to support the FCCE's objectives rather than the best interests of the families involved. Their purported expertise lent legitimacy to the enterprise's false narratives, covered up abuse, and facilitated the unlawful deprivation of parental rights.

6) Family Annihilation Enterprise Controversy:  In this Family Controversy," The Defendant attorney(s) allegedly committed multiple violations of the Rules of Professional Conduct by failing to disclose the trust account(s). These violations included failing to properly communicate, representing the Claimant(s) despite unwaivable

conflicts, and depositing funds into a trust without consent.

7) Through this sprawling network of corrupt judges, attorneys, guardians, and other professionals systematically exploiting the family court system, the MO-FCCE allegedly inflicted immense harm on countless victims like the Claimant(s), highlighting the pervasive nature of the alleged corruption and its devastating impact on families and individuals.

### IX.    The Fraudulent Legal Proceedings and Racketeering Pattern

1.   The Defendant Attorney(s) in this case initiated custody related legal proceedings against the Claimant(s) on behalf of the Defendant(s). These actions involved the use of mail and wire communications in furtherance of a fraudulent scheme orchestrated by the FCCE racketeering conspiracy.

2.   Purposes and Means of the Enterprise: The FCCE's overarching purpose is to hijack the family court process to unlawfully extract financial gains and taxpayer funds by separating offspring from their parents without justification, fraudulently assigning custody to abusive or financially conflicted guardians, and funneling the seized youth into residential facilities participating in the enterprise's kickback scheme. The Defendant(s) abuse the awesome power of the State to perpetrate their fraud - manipulating custody battles, filing false abuse allegations, and fabricating mental health evidence to manufacture a pretext for removing offspring and prolonging litigation to maximize billable hours and ancillary service fees. To achieve these ends, the enterprise weaponizes the family court system through several illicit means, including:

a)   Engaging in quid pro quo schemes whereby judges issue corrupt rulings in exchange for financial benefits;

b) Failing to report and actively concealing evidence of abuse, domestic violence, and parental unfitness by politically connected or favored parties;

c) Using strong armed tactics such as threats and cohesion on Claimant(s) and their minor offspring inorder to gain lawful custody;

d) Police and Sheriff Defendant(s) refuse to issue amber alerts for the Claimant(s)' offspring and prosecutors refuse to charge Defendant(s) with kidnapping, even when they remove offspring from their parent's home or school without a lawful court order stating that the Claimant(s)' no longer had custody.

e) Unknown co- conspirators, dressed as security guards which greatly resemble official police, remove the Claimant(s)' offspring from public schools, unbeknownst to the parent(s). The minor offspring are then put in the custody and control of the Department of Social Services. The Claimant(s)' custody is stripped and the minor offspring are sent to live in foster homes and orphanages.

f) Conducting sham proceedings that deprive Claimant(s) of due process, including through ex parte communications and disregarding rules of evidence and procedure;

g) Compiling lists of biased doctors and therapists, then offering this list of "choices" to their clients who are unaware that all of the medical professionals are working to generate money for the FCCE, not give them impartial evaluations. By doing so, the Defendant(s) conspire to generate money for the state through Title IV-D, IV-E, and other void trafficking codes which can only be utilized by striping the Claimant(s) of their custody and control.

h) Filing false CPS reports, fraudulent pleadings, and perjured testimony to create a presumption of parental unfitness;

    i)   Rubber-stamping fraudulent GAL and custody evaluator fees without scrutiny;

    j)   Ordering children into residential treatment facilities that kickback referral fees to the GALs and judges;

    k)   Issuing gag orders and threatening sanctions to conceal the enterprise's misconduct;

    l)   Retaliating against and tampering with witnesses who seek to expose the criminal schemes.

3. These means and methods of executing the enterprise's fraudulent schemes constitute a pattern of racketeering activity prohibited under RICO, causing injury to the Claimant(s) and countless other families abused by the corrupt cabal.

## X.   The Enterprise's Participants and Their Roles

1. The Judicial Racket Enterprise: Corrupt judges form the core of the FCCE, abusing their authority to pervert the family court process into a racketeering scheme.

2. The Defendant Judge(s) in this case;

a.  Issued fraudulent custody orders placing offspring with abusive guardians, disregarded evidence of misconduct, threatened unlawful sanctions to coerce compliance.

b.  Rigged proceedings to favor GALs and attorneys participating in the kickback scheme, railroaded protective parents with fabricated allegations. Defendant Judges also signed off on fraudulent involuntary commitment orders against the Claimant(s) and/ or their offspring, to conceal evidence of the enterprise's activities and to retaliate against whistleblowers.

## XI.  The Guardian Ad Litem Fraud Enterprise

1. Court-appointed GALs exploit their authority to perpetrate fraud and facilitate the child trafficking conspiracy:

2. The G.A.L. in this case falsified reports, disregarded abuse evidence, threatened witnesses, billed for fraudulent charges as part of the kickback scheme.

3. The Defendant(s) also manufactured false evidence to justify separating offspring from parents, concealed exculpatory records, and collected referral fees from placement facilities. The Defendant(s) suborned perjury, filed fraudulent fee requests, funneled offspring to conspirator-owned residential treatment centers.

4. THE FCCE'S PLAN FOR IMPLEMENTATION OF MURDER FOR HIRE GUARDIAN AD LITEM'S FRAUD "STANDARDS."

5. O.C.G.A. § 15-11-104: Governs the appointment of GALs in juvenile court proceedings.

6. O.C.G.A. § 19-9-5: Pertains to the appointment of GALs in custody disputes.

7. O.C.G.A. § 19-7-5: Addresses the reporting and investigation of child abuse and the role of GALs in such cases.

Exploitation by the FCCE:

8. Selective Appointment: The discretion given to the Administrative Judge(s) in selecting GALs has led to favoritism and bias, creating the Guardian Ad Litem Fraud Enterprise. This has resulted in certain attorneys being preferred over others, compromising the quality of representation for innocent youth with detrimental effects.

9. Performance Reviews: The performance review process, while intended to ensure quality, has been used to unjustly remove GALs who do not align with the "preferences" and

biases of the reviewing authorities. This has discouraged GALs from advocating strongly for their clients, fearing repercussions from the FCCE.

10. Payment Structure: The flat fee retainer for GALs have incentivized minimal effort on cases to maximize profit, leading to inadequate representation for innocent families, an act of treason pursuant to 18 U.S.C. Section 242. Conversely, the case-by-case payment for GALs have led to financial instability and affected the willingness of qualified attorneys to serve.

11. Administrative Discretion: The broad discretion given to the Administrative Judge(s) in recruitment, selection, and removal of GALs has been exploited to control the pool of GALs, leading to a lack of competence in representation in the GAL community.

12. Case Law: Pennsylvania Judgment against GAL and GAL Quasi-Judicial Immunity:

*https://www.pacourts.us/assets/opinions/Supreme/out/J-48-2023mo%20-%201059539472681175 25.pdf?cb=1*

13. Legal Analysis: The trial court dismissed all claims against Attorney Langenbach and the Defender Association on grounds of immunity, including legal malpractice and intentional infliction of emotional distress (IIED). The Superior Court reversed this decision, holding that GALs do not possess quasi-judicial immunity as their role is advocacy, not adjudication. This decision aligns with the statutory framework and procedural rules governing GAL appointments (42 Pa.C.S. § 6311; Pa.R.J.P. 1151, 1154).

14. Conclusion: The Superior Court's decision to reverse the trial court's reliance on quasi-judicial immunity for GALs is affirmed. The case is remanded for further proceedings consistent with this opinion, ensuring that legal remedies remain available

for claims of malpractice and other torts committed by GALs in the course of their advocacy.

## XII.  The Legal Abuse Enterprise

1. Unethical attorneys exploit their law licenses to weaponize the legal process against target families.

2. The Defendant(s) filed false pleadings, coached witnesses to provide perjured testimony, obstructed GAL investigations into abuse by favored parties. The Defendant(s) Initiated vexatious litigation to drain family resources, filed knowingly false CPS reports, trafficked client information to blackmail witnesses.

## XIII.  The Blue Code Enterprise

1. Law enforcement conspirators abuse their power to execute unlawful child seizures and retaliate against parents also known as Child Bounty Hunters. These Child Bounty Hunters were armed and dangerous while displaying guns, tazers, and mace, therefore, "punishment varies from one year imprisonment and a fine or both, and if bodily injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this section, and the violation is by means of fire or an explosive, a fine under this title or imprisonment of not more than forty years or both; or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined in accordance with this title and imprisonment for up to twenty years, or both, and if death results or if such acts include **kidnapping** or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined in accordance with this title and imprisoned for

any term of years or for life, or both, or may be **sentenced to death"** (18 U.S.C. Section 242).

2. The Claimant(s) assert claims under **42 U.S.C. § 1983**, which provides a remedy for violations of constitutional rights by individuals acting under color of state law. This lawsuit contends that the Blue Code Enterprise defendants, acting in their official capacities as members of various law enforcement agencies and government entities, engaged in conduct that deprived the Claimant(s) of their rights guaranteed under the U.S. Constitution.

3. The officers and sheriff's named as Defendant(s) in this case enforced fraudulent custody orders, arrested protective parents on trumped-up charges, and threatened witnesses. The Claimant(s) were subject to religious persecution during the deprivation of their parental rights in breach of Title 18, U.S.C., Section 247 - Church Arson Prevention Act of 1996

4. Prohibits (1) intentional defacement, damage, or destruction of any religious real property, because of the religious, racial, or ethnic characteristics of that property, or (2) intentional obstruction by force or threat of force, or attempts to obstruct any person in the enjoyment of that person's free exercise of religious beliefs. If the intent of the crime is motivated for reasons of religious animosity, it must be proven that the religious real property has a sufficient connection with interstate or foreign commerce. However, if the intent of the crime is racially motivated, there is no requirement to satisfy the interstate or foreign commerce clause.

5. The officers and sheriff's named as Defendant(s) in this case also failed to engage in the human trafficking of children when the Claimant(s) attempted to file reports with their department(s), even denying them of wellness checks.

## XIV.   The Psycho Fraud Enterprise

1. Mental health professionals named as Defendant(s) in this case provided fraudulent evaluations and manufactured false evidence, conducted sham psychological evaluations to paint protective parents as unfit, concealed evidence of coaching and manipulation.

2. The Defendant(s) submitted false reports and testimony labeling protective parents with fabricated mental health disorders.

## XV.   The Pattern of Racketeering Activity

1. Predicate Acts: The Defendant(s), operating through the FCCE and its affiliated enterprises, were involved in a consistent pattern of criminal activity that violated various federal laws. These unlawful acts, known as predicate acts, include but are not limited to:

2. Wire and Mail Fraud (18 U.S.C. §§ 1341, 1343): The Defendant(s) in this case committed numerous acts of wire and mail fraud in furtherance of their scheme to defraud litigants and unlawfully enrich themselves. They utilized interstate wires and U.S. mails to transmit fraudulently inflated GAL invoices, file false pleadings and affidavits, and coordinate their illicit activities across state lines. The Defendant(s)' knowing and willful use of wire and mail communications to execute their billing fraud scheme and deprive litigants of property constitutes a pattern of indictable offenses under 18 U.S.C. §§ 1341 and 1343.

3. *THE MO- FCCE'S PATTERNS OF RACKETEERING & GANG ACTIVITIES, AN OVERVIEW:* The MO- FCCE's Attorney and GAL Defendant(s), who were caught orchestrating their gang activities on the "CASH FOR KIDS- ZOOMGATE CONFERENCE," were: Sarah Pleban, Esq., Elaine Pudlowski, Esq., Charles Brian

Flynn, Esq. Leigh Carson, Esq., Kelly Chevalier, Esq., Henry M. Miller, Esq., Arthur H.

Nissenbaum, Esq., Justin Ruth, Esq., Jennifer Piper, Esq., Sharon Remis, Esq., Rachna

Lien, Esq. D. Kimberly Whittle, Esq., Deborah Roeder, Esq., Maia Brodie, Esq., David S.

Betz, Esq., Amy Diemer, Esq., Laura Hawk Stobie, Esq., Office of Chief Disciplinary

Counsel representative Shevon Harris, Esq., Mark Kiesewetter, Esq., Greg Brough, Esq.,

Deborah Roeder, Esq., Venus Jackson, Esq., Lisa Sigmund, Esq., Lynn Reichert, Esq.,

Colleen Hubble, Esq., Mary Davidson, Esq., Cynthia Albin, Esq., Sylvia Pociask, Esq.,

Molly Murphy, Esq., Beth Lewandowski, Esq. and potentially others.

4.  ZOOMGATE call transcript with a full list of the affiliated members. See Exhibit:

    https://acrobat.adobe.com/id/urn:aaid:sc:VA6C2:16185fbe-2567-4466-96fa-7650f601433e

5.  Video evidence of ZOOMGATE Call, Short Version:

    https://www.dropbox.com/scl/fi/9hfxv83ddw7gmruzcr7ig/2024-1-1-16-1-38.mp4?rlkey=bui3f4mptfhv6ymjl513xnwwc&dl=0

6.  Video evidence of ZOOMGATE Call, Full Version. See Exhibit:

    https://www.youtube.com/watch?v=z_Re_bX118k

7.  ZOOMGATE, AN OVERVIEW:

    https://youtu.be/w7vhEAF9onM?si=IR52iRuks60F4fRq

8.  Due to the following Predicate Offenses committed by the foregoing Attorney and GAL

    Defendant(s), the following ***LEADERS*** have been identified within the Guardian Ad

    Litem Fraud and Legal Abuse Enterprise(s) which make up the MO- FCCE, an organized

    gang with a common purpose.

9.  ***THE "BOSSES"***

a.  Sarah Pleban;

b.  Elaine Pudlowski;

c.  Laura H. Stobie;

d.  Kelly Chevalier;

e.  Charles Brian Flynn;

f.  Henry M. Miller;

g.  Kimberly Whittle;

h.  Beth Lewandowski.

**PREDICATE OFFENSES:** *Only requires the state to prove that members within that group committed a pattern of crimes.*

The following cases had similar outcomes and victims; unjustified parental alienation and/ or kidnapping, harsh financial penalties (aka extortion), all portrayed as "bonafide" services. While offering "bogus" services to their victims in the following cases, the Attorney/ GAL Defendant(s) committed multiple predicate offenses including but not limited to;

a)  Extortion;

b)  Interstate commerce;

c)  Arson;

d)  Gambling (AKA: Death Wagers);

e)  Manslaughter;

f)  Kidnapping.

10. *Case No.* **23SL-DR00146 -** *DOBKIN, NICHOLAS A (*Petitioner).

a.  Represented By *DESCHER, JOANNE* - Attorney for Petitioner

b.  *DOBKIN, MOLLY - (*Respondent)

c.  WEEMS, MARY ANN - Attorney for Respondent

d.  *FLYNN, CHARLES BRIAN* - Guardian Ad Litem

e.  Judge/Commissioner Assigned- HEARNE, MATTHEW HILL

11. **Case No. 23SL-DR00955-** VARVARO, PIERO (Petitioner).

a.  Represented By <u>STOBIE, LAURA HAWK</u> - Attorney for Petitioner

b.  VARVARO, DIONNA - (Respondent), Represented By CAPSHAW, JOYCE MARIAN - Attorney for Respondent.

c.  Co-Counsel, POOLE, JORDAN A - Attorney for Respondent

d.  ADDITIONAL ATTORNEYS- <u>PUDLOWSKI, ELAINE A</u>. - Guardian Ad Litem

e.  Judge/ Commissioner Assigned- MEDLER, JEFFREY PAUL.

12. **Case No. 16SL-DR01191-02-** PRUESSNER, DAVID W -(Petitioner)

a.  Represented By MOORE, LISA G - Attorney for Petitioner

b.  PRUESSNER, BERNADINE D'ORVILLE -(Respondent)

c.  Represented By COHEN, NATHAN S - Attorney for Respondent

d.  CAMAZINE, ALISSE CHERYL - Attorney for Petitioner

e.  Co-Counsel KEEBLE, CARA CHRISTYNE - Attorney for Petitioner

f.   ADDITIONAL ATTORNEYS: <u>STOBIE, LAURA HAWK</u> - Guardian Ad Litem

g.  Judge/ Commissioner Assigned: GREAVES, MARY W.

13. **Case No. 20SL-DR00079-** BAUM, JEREMY W -(Petitioner)

a.  Represented By WULFF, ERIC J. - Attorney for Petitioner

b.  LYONS, CELSI M -(Respondent)

c.  Represented By EMERT, BRADFORD C - Attorney for Respondent

d.  ADDITIONAL ATTORNEYS <u>WHITTLE, D. KIMBERLY</u> - Guardian Ad Litem

e.  <u>CHEVALIER, KELLY B.</u> - Guardian Ad Litem

f.  Judge/ Commissioner Assigned: HEARNE, MATTHEW HILL

**14. Case No. 19SL-DR00409-01-** MOSSOTTI, ARMAND VINCENT II -(Petitioner)

a.  Represented By: BANTE, JOSEPH T. - Attorney for Petitioner

b.  Co-Counsel BEAL, JAMES ETHAN - Attorney for Petitioner

c.  MOSSOTTI, JENNIFER RACHEL -Respondent

d.  Represented By <u>LEWANDOWSKI, BETH ANN</u> - Attorney for Respondent

e.  <u>STOBIE, LAURA HAWK</u> - Guardian Ad Litem

f.  Judge/ Commissioner Assigned: GREEN, JOSEPH L.

15.  **Case No. 19SL-DR03151-** WILSON, JENNIFER -(Petitioner)

a.  Represented By BUCHANAN, KIMBERLY ULRICH - Attorney for Petitioner

b.  WILSON, GREGORY -(Respondent)

c.  Represented By <u>STOBIE, LAURA HAWK</u> - Attorney for Respondent

d.  PHELPS, THERESA A. - Attorney for Other Party

e.  Judge/ Commissioner Assigned: MEDLER, JEFFREY PAUL

16. **Case No. 23SL-DR02137-** AUGUSTINE, KIRK -(Petitioner)

a.  Represented By KALLEN, CRAIG GEIDEL - Attorney for Petitioner

b.  Co-Counsel GRAY, RACHEL S. - Attorney for Petitioner

c.  AUGUSTINE, CHRISTINE -(Respondent)

17. BROWN, BRITTANY A - Attorney for Respondent

18. ADDITIONAL ATTORNEYS <u>PLEBAN, SARAH SHELLEDY</u> - Guardian Ad Litem

19. Judge/ Commissioner Assigned: LASATER, JULIA PUSATERI

20.  *Case No. 20SL-DR01448-02-* LASSEN, DUSTY L (-Petitioner)

a.  Represented By BROWN, BRITTANY A - Attorney for Petitioner

b.  Co-Counsel POOLE, JORDAN A - Attorney for Petitioner

c.  LASSEN, JESSICA A -( Respondent)

d.  <u>STOBIE, LAURA HAWK</u> - Guardian Ad Litem

e.  <u>MILLER, HENRY M.</u> - Attorney for Respondent

f.  Co-Counsel FLYNN, CHARLES BRIAN - Co-Counsel

g.  Judge/ Commissioner Assigned: LASATER, JULIA PUSATERI

21.  *Case No. 08SL-DR01390-03-* SPASSER, ANDREA WOOLDRIDGE -(Petitioner)

a.  Represented By MARLER, SARA LYNN - Attorney for Petitioner

b.  Co-Counsel GABEL, DENISE NICOLE - Co-Counsel for Petitioner

c.  Co-Counsel FLINT, KRISTI R - Attorney for Petitioner

d.  FREEMAN, LINDA MARIE - Attorney for Petitioner

e.  SPASSER, DEAN M -(Respondent)

f.  Represented By LEIGHTNER, JAMES J. - Attorney for Respondent

g.  <u>STOBIE, LAURA HAWK</u> - Guardian Ad Litem

h.  Judge/ Commissioner Assigned: HILTON, BRUCE F.

22. *Case No. 20SL-DR01296-01-* BODIE, GEORGE -(Petitioner)

a.  Represented By HOGAN, WILLIAM PATRICK - Attorney for Petitioner

b.  BODIE, JENOTTA -(Respondent)

c.  Represented By DUNLOP, BRIAN DUDLEY - Attorney for Respondent

d.  ADDITIONAL ATTORNEYS <u>STOBIE, LAURA HAWK</u> - Guardian Ad Litem

e.  Judge/ Commissioner Assigned: GREAVES, MARY W.

23. *Case No. 19SL-DR03884-01-* ECKHARDT, AARON -(Petitioner)

a. Represented By <u>STOBIE, LAURA HAWK</u> - Attorney for Petitioner

b. ECKHARDT, MEGAN - (Respondent)

c. ADDITIONAL ATTORNEYS <u>PUDLOWSKI, ELAINE A</u>. - Guardian Ad Litem

d. Judge/ Commissioner Assigned: JULIAN, MEGAN HIGGINS

24. *Case No. 23SL-DR05164-* WHITE, JONATHAN L -(Petitioner)

a. Represented By BROWN, BRITTANY A - Attorney for Petitioner

b. WHITE, NATALIE M -(Respondent)

c. Represented By KLINE, LEE G - Attorney for Respondent

d. <u>PLEBAN, SARAH SHELLEDY</u> - Guardian Ad Litem

e. Judge/ Commissioner Assigned: JULIAN, MEGAN HIGGINS

25. *Case No. 19SL-DR03795-* MARINO, SHANNON -(Petitioner)

a. Represented By RAZA, SOPHYA QURESHI - Attorney for Petitioner

b. MARINO, MICHAEL -(Respondent)

c. Represented By COHEN, BYRON - Attorney for Respondent

d. ADDITIONAL ATTORNEYS <u>PLEBAN, SARAH SHELLEDY</u> - Guardian Ad Litem

e. MARTIN, JAMES M - Attorney for Other Party

f. Judge/ Commissioner Assigned: MCNELLEY, AMANDA BUNDREN

26. *Case No. 23SL-DR02137-* AUGUSTINE, KIRK -(Petitioner)

a. Represented By KALLEN, CRAIG GEIDEL - Attorney for Petitioner

b. Co-Counsel GRAY, RACHEL S. - Attorney for Petitioner

c. AUGUSTINE, CHRISTINE -(Respondent)

d. Represented By BROWN, BRITTANY A - Attorney for Respondent

e.  ADDITIONAL ATTORNEYS <u>PLEBAN, SARAH SHELLEDY</u> - Guardian Ad Litem

f.  Judge/ Commissioner Assigned: LASATER, JULIA PUSATERI

27.  *Case No. 24SL-DR00843-* CARRIER, DREW -(Petitioner)

a.  Represented By KOHLFELD, ALEXANDRA C. - Attorney for Petitioner

b.  Co-Counsel PAGE, TONYA D. - Attorney for Petitioner

c.  Co-Counsel DILLOW, JULIA RENAE - Attorney for Petitioner

d.  Represented By BRUNTRAGER, ANN VATTEROTT - Attorney for Respondent

e.  Co-Counsel BARDOL, STEPHEN JAMES - Attorney for Respondent

f.  ADDITIONAL ATTORNEYS <u>PLEBAN, SARAH SHELLEDY</u> - Guardian Ad Litem

g.  Judge/ Commissioner Assigned: HEARNE, MATTHEW HILL

*Predicate Acts*

1.  Wire and Mail Fraud (18 U.S.C. §§ 1341, 1343)

2.  The enterprise(s) transmitted fraudulent GAL invoices and false pleadings via U.S. mail and interstate wires.

3.  Defendant(s) used email, text messages, and phone calls across state lines to coordinate their schemes and transmit illicit payments.

### XVI.  Obstruction of Justice (18 U.S.C. § 1503, 1512(c)(2))

1.  The G.A.L. in this case concealed and destroyed exculpatory evidence of parental fitness and child abuse.

2.  The Defendant Judge(s) in this case corruptly influenced custody proceedings to place children with abusive guardians.

3. The attorney(s) listed as Defendant(s) in this case suborned perjury and filed false pleadings to defraud the court and obstruct its truth-finding function.

4. The Defendant(s) engaged in numerous acts obstructing and impeding the due administration of justice in state and federal courts. The presiding Judge corruptly influenced custody proceedings by disregarding evidence of abuse and coercing compliance with unlawful orders through threats of incarceration. The GALs fabricated evidence and concealed abuse to manipulate case outcomes. The attorney Defendant(s) in this case suborned perjury and filed false pleadings to taint proceedings.

## XVII.  Witness Tampering (18 U.S.C. § 1512)

1. The GAL in this case threatened and harassed potential witnesses to prevent them from testifying about abuse.

2. The enterprise(s) retaliated against parents and whistleblowers who spoke out with false criminal charges and vexatious litigation.

3. Defendant(s) exploited fraudulent COVID protocols to exclude favorable witnesses from hearings.

4. The Defendant(s) in this case engaged in pervasive witness tampering to suppress evidence of their criminal activities. They used physical force, threats, intimidation, and corrupt persuasion to prevent testimony from the Plaintiff and other witnesses who could expose their scheme. The Defendant(s) exploited fraudulent COVID protocols to unlawfully exclude the Claimant(s)' favorable witnesses from hearings. The attorney Defendant(s) alongside the presiding Judge(s) in this case used harassment and threats of arrest in attempts to prevent the Claimant(s) from appearing and testifying to their full

ability. These acts constitute indictable violations of 18 U.S.C. § 1512(a)(2), (b)(1), and (d)(1).

## XVIII.  Conspiracy Against Rights (18 U.S.C. § 241)

1. The Defendant Judge(s), GAL(s), and Attorney(s) conspired to deprive the Claimant(s) of their parental rights without due process.

2. The Legal Abuse Enterprise filed frivolous lawsuits to intimidate the Claimant(s) from exercising their constitutional right to petition for redress.

3. The Blue Code Enterprise arrested protective parent(s) without probable cause to chill their First Amendment rights.

4. The Defendant(s) conspired to injure, oppress, threaten, and intimidate the Claimant(s) in order to obstruct the free exercise and enjoyment of their constitutional rights. The GAL Fraud Enterprise deliberately violated the Claimant(s)' due process rights by concealing evidence and obstructing their ability to challenge their fraudulent fees. The Judicial Racket Enterprise, consisting of the Defendant Judge(s) denied the Claimant(s) of their fundamental parental rights without due process. The Blue Code Enterprise unlawfully seized the Claimant(s)' offspring under the color of official authority. These concerted efforts to deprive the Plaintiff(s) of their constitutional rights establish an indictable conspiracy under 18 U.S.C. § 241.

## XIX.  The Enterprise's Participants and Their Roles Continued &

## Travel Act Violations (18 U.S.C. § 1952)

1.  The Defendant(s) used interstate facilities to distribute illicit proceeds of their racketeering activity and promote the unlawful scheme.

2.  GAL(s) and attorney(s) traveled across state lines and used the interstate mails to solicit and receive kickbacks.

3.  Residential facilities used interstate wires to coordinate the transfer and harboring of abducted children.

4.  The duration, relatedness, and continuing threat of the Defendant(s)' predicate criminal acts demonstrate a pattern of racketeering under RICO. The consistent means, methods, and motives of the enterprise's activities over several years establish the continuity and interconnectedness of the predicate offenses. This pattern of racketeering activity, perpetrated through the illicit structure and means described above, forms the core of the FCCE's overarching conspiracy to hijack the family courts for personal enrichment - a conspiracy that continues to pose a grave threat to the integrity of the justice system and the welfare of children absent judicial intervention under RICO's expansive equitable powers.

5.  The FCCE is the overarching criminal organization consisting of corrupt judges, attorneys, guardians ad litem, court staff, mental health professionals, and state actors. They have infiltrated the family courts to carry out child custody deprivation and human trafficking schemes for illicit financial gain. The FCCE directs and facilitates the

racketeering activities of its subordinate enterprises to achieve the conspiracy's objectives.

6. ***The Judicial Racket Enterprise*** is composed of the Defendant Judge(s) in the 21st Judicial Circuit Court as well as other compromised judicial officers who abuse their authority and violate judicial ethics to pervert family court processes for the FCCE's benefit. These judges engage in bribery, cronyism, and issue fraudulent custody orders to enable seizing children from biological parents without due process - a key step in the trafficking pipeline.

7. ***The Guardian Ad Litem Fraud Enterprise*** consists of the G.A.L. Defendant(s) in this case and other corrupt GALs who commit fraud, file false reports, and conceal abuse evidence to manufacture pretenses for removing children from fit parents. This enterprise exploits the court's trust to enable illicit custody transfers through misrepresentations while embezzling state funds through fraudulent billing.

8. ***The Legal Abuse Enterprise*** is a group of unethical attorneys like Defendant(s) in these case(s) who use their law licenses to perpetrate the FCCE's schemes through vexatious litigation, perjury, and intentional fraud upon the courts. These attorneys retaliate against protective parents with abusive tactics, drain family resources with excessive fees, and provide a veneer of "legal" justification for unlawful custody deprivations.

9. ***The Blue Code Enterprise*** is a syndicate of corrupt law enforcement, including the Defendant(s) in this case who willfully violate civil rights and obstruct justice to facilitate the FCCE's enterprises. Using intimidation, excessive force, and refusing to investigate crimes, they ensure unlawful child seizures can be executed under color of law without resistance from fit parents. Wherefore, the Claimant(s) assert claims under **42 U.S.C. §**

**1983**, which provides a remedy for violations of constitutional rights by individuals acting under color of state law. This lawsuit contends that the Blue Code Enterprise Defendants, acting in their official capacities as members of various law enforcement agencies and government entities, engaged in conduct that deprived the Claimant(s) of their rights guaranteed under the U.S. Constitution

10. *The Psycho Fraud Enterprise* is a racketeering enterprise of compromised mental health professionals and evaluators providing fraudulent diagnoses, biased opinions and false reports to "pathologize" protective parents and justify removing children. The Defendant(s) in this case weaponized their credentials to conceal abuse evidence and portray FCCE targets as unfit, thereby corrupting mental health services to facilitate trafficking.

11. *The Family Annihilation Enterprise* is an enterprise which consists of abusive and controlling family members, along with co- conspirator(s) within the family. These Defendant(s) chose to collude against their own family member(s), with conspirators of the  FCCE, to alienate them from their offspring for their own financial and personal gains.

12. *The Residential Trafficking Enterprise,* such as the Department of Social Services and the Domestic Relations Department, harbors and psychologically abuses trafficked children once removed from their parents, grooming them for exploitation. Such as the Defendant(s) in these case(s) who are key operatives in this final trafficking chain link, subjecting minors to isolation, cruel and unusual punishment, conversion tactics, and sexual endangerment under guise of fraudulent custody/ adoption orders. Their coercive

program(s) sever parental bonds and transform seized children into vulnerable targets for prolonged abuse.

13. Together, these interconnected enterprises form the FCCE - a sinister coalition that has hijacked our justice system and child welfare apparatus to perpetrate unthinkable crimes against families for profit. Therefore, this litigation aims to dismantle each component enterprise and hold every racketeer accountable for their egregious violations of the law and fundamental human rights. Exposing the depth and brazenness of this criminal conspiracy through the courts is vital to preventing more families from being harmed by this reprehensible abuse of power. The interests of justice demand full accountability.

14. The Defendant(s) utilized facilities of interstate commerce, including interstate wires, mails, and financial institutions, to distribute the proceeds of and otherwise promote their unlawful activity. The Defendant Judge(s) used interstate wires to solicit and receive things of value, including campaign contributions and favors, in exchange for their official acts to advance the enterprise's objectives. The GAL Fraud Enterprise used mails and wires to transmit their fraudulent billing invoices across state lines. These acts constitute indictable offenses under the Travel Act, 18 U.S.C. § 1952.

## XX. Continuity and Relationship of Predicate Acts

1. The Defendants' racketeering activities spanned several years, with the predicate acts continuing up until the present and posing a threat of continued criminal activity into the future. The frequency and duration of the predicate acts satisfy the requirement of closed-ended continuity. The predicate acts are also all related to the central purpose of enriching the Defendant(s) by corruptly manipulating the family court system to unlawfully seize children and extract financial gains through fraud, extortion and undue

influence. The predicate offenses involve the same participants, victims, methods of commission and are otherwise interrelated by distinguishing characteristics demonstrating they are not isolated events. The continuity and relationship of the pattern of predicate acts establishes the Defendant(s)' liability for conducting the affairs of the FCCE through a pattern of racketeering activity.

### XXI. Additional Predicate Acts

2. Defendant(s) initiated legal proceedings on behalf of the Family Annihilation Enterprise(s) in this case by filing false and fraudulent paternity judgments and motions, engaging in mail and wire fraud to further the enterprise's scheme (18 U.S.C. §§ 1341, 1343).

3. The Defendant Judge(s) appointed the Defendant G.A.L(s) for the Claimant(s)' minor offspring and ordered fee payments from the Claimant(s) and the other parties in the case, which constitutes facilitating bribery and fraud within the enterprise (18 U.S.C. § 201).

4. Attorney Defendant(s) engaged in legal proceedings regarding court-ordered Psychological Evaluation(s) and the release of the Claimant(s) and/ or offspring(s)' medical records without their knowledge or involvement, violating ethical rules and colluding with the opposition to undermine the Claimant(s)' interests (18 U.S.C. § 1503).

5. Defendant G.A.L(s) made contradictory statements and misrepresentations to the Claimant(s) regarding the psychological evaluation, coordinating with Attorney Defendant(s) to  push a false narrative and abuse judicial processes in furtherance of the enterprise's objectives (18 U.S.C. § 1503, 1512).

6. Attorney Defendant(s) colluded to weaponize the Claimant(s)' harmless beliefs against them manufacturing a pretext to deprive their  custody and enable Defendant Judge(s) retaliatory actions, as evident by the following exhibits (18 U.S.C. § 1503, 1512).

7. Attorney Defendant(s) made false statements to the court regarding the cognitive abilities of the Claimant(s)' offspring, engaging in fraud upon the court to manipulate proceedings in favor of their client at the expense of the minor offspring (18 U.S.C. § 1503). Therefore, the Claimant(s) would like to bring the following exhibits forward. These exhibits depict their offspring, while still in their full care and custody, meeting all of their developmental milestones (See exhibit: Family Videos).

8. Defendant GAL(s) failed to take reasonable measures to protect the minor offspring from the reported abuse in Defendant(s) home and despite their knowledge of the risks and their affirmative duty as a GAL(s), (18 U.S.C. § 242).

9. Defendant(s) and the Family Annihilation Enterprise in this case engaged in the psychological manipulation, coercion, and enticement of the minor offspring to isolate them from the Claimant(s) and facilitate detachment from the parent- child relationship (18 U.S.C. § 1591, 2422).

10. Attorney Defendant(s) made false statements to the court regarding the Claimant(s)' alleged failure to comply with court-ordered drug testing, engaging in fraud upon the court to manipulate proceedings in favor of the Defendant(s) (18 U.S.C. § 1503).

11. Attorney Defendant(s) engaged in a biased and aggressive line of questioning aimed at manufacturing a pretext for removing custody from the Claimant(s) while disregarding credible evidence of abuse and misconduct by the Family Annihilation Enterprise (18 U.S.C. § 1512).

12. Attorney Defendant(s) instructed the Family Annihilation Enterprise Defendant(s) to involve law enforcement to expedite the minor offspring(s)' removal from the Claimant(s)' custody before there was a court judgment (18 U.S.C. § 1512).

13. G.A.L. Defendant(s) deliberately failed to properly investigate evidence of abuse, domestic violence, stalking, and sexual harassment by the Family Annihilation Enterprise Defendant(s) engaging in witness tampering and dereliction of their court-appointed duties to protect the minor offspring(s)' welfare (18 U.S.C. §§ 1503, 1512, 242).

14. Judge Defendant(s) exhibited bias and disregard for the Claimant(s)' procedural rights, rushing to have them involuntarily committed and/or imprisoned without an inkling of proof that they were a threat to themselves or others, overtly prejudging the Claimant(s)' evidence, facilitating the deprivation of their parental rights through abuse of judicial authority (18 U.S.C. § 242).

15. To make matters worse, the Governor Defendant turned a blind eye to the criminal activity that the Claimant(s) were reporting and handed out promotions and pay raises to the Judge Defendant(s), despite the fact they were committing high crimes on children.

16. The Defendants responsible for the Department of Family Services in this State are liable for the human trafficking of the Claimant(s)' offspring, as well as many other children who remain unspoken for.

17. Overall, the Defendant(s) are offering bogus services and portraying them as bonafide services, most of which are funded by taxpayers and are responsible for the forced disappearance and human trafficking of countless children.

## XXII.  The Fraudulent Legal Proceedings and Racketeering Pattern

1. Attorney Defendant(s) initiated legal proceedings against the Claimant(s) on behalf of The Family Annihilation Enterprise related to ongoing custody dispute(s). These actions involved the use of mail and wire communications in furtherance of a fraudulent scheme orchestrated by the FCCE racketeering conspiracy.

2. The Claimant(s) hired Defendant Attorney(s) within the FCCE unknowing they would be set up to lose before they even entered the court. The judicial machinery of the FCCE enterprise all favor outcomes of parental alienation to generate funds through Title IV-D and the Adoption and Safe Families Act *(Void Child Trafficking Codes).*

3. Depriving the Claimant(s) of their custodial authority inorder to generate funds for the FCCE consists of identical tactical advantages employed by the Defendant(s), such as striking motions for the inability to pay inflated GAL fees. The Defendant(s) are known to use threats of parental alienation if parents refuse to agree to custody orders and/or modifications that slowly eliminate their custody time. The Defendant(s) flood the D.R.S. Department with alienated parents in order to make them pay for pricey and restrictive supervised visits and/ or phone calls. The Claimant(s) we're subject to this cruel and unusual punishment despite they were never charged with child abuse, neglect, or abandonment.

4. These actions by Defendant(s) constituted an extensive pattern of racketeering activity including mail fraud, wire fraud, tampering with witnesses, bribery, and extortion - all designed to deprive the Claimant(s) of their custodial authority through fraudulent means as part of the FCCE scheme.

5. The Claimant(s)' offspring were similarly trafficked forcibly from their home(s) by the Defendant(s) within the Residential Trafficking Enterprise and Blue Code Enterprise without specific court order(s) stating that the Claimant(s) no longer had custody. A crime of the lowest means to commit on innocent individuals, all to aid the FCCE's profit ridden agenda.

6. The attorney Defendant(s) colluded similarly to mandate T.R.O.(s) frivolously and aimlessly in order to conceal the trafficking of the Claimant(s)' offspring.

7. The Judge, GAL, and attorney Defendant(s) similarly colluded to force pricey psychiatric evaluation and/ or therapy on the Claimant(s), all actions premeditated as fraudulent means to generate money for the FCCE scheme through the Psycho Fraud Enterprise.

8. In furtherance of the conspiracy, the Judge, GAL, and attorney Defendant(s) all similarly colluded to deprive the Claimant(s) of a preliminary injunction hearing, in conjunction with the baseless T.R.O.(s), in order to deprive them of a chance to testify. These actions further demonstrate the agreed pattern of intimidation and witness tampering deployed by Defendant(s).

9. Defendant Judge(s) similarly denied due process rights, and instead acted as players for the FCCE, by continuing Preliminary Injunction Hearing(s) until they fell off the Docket and disappeared completely. In such T.R.O. case(s) the court's coercive overreach was non-negotiable under threat of permanent custody deprivation for perceived defiance of its authority, despite the Claimant(s) having followed every court order.

10. During these T.R.O. hearings, The Judge, GAL, and attorney Defendant(s) similarly engaged in an unauthorized ex parte sidebar discussion with Co-Defendant(s), excluding the Claimant(s) and highlighting the coordinated conspiracy to corrupt the proceedings

and fixate predetermined outcomes favoring interests of the Family Annihilation Enterprise/ Residential Trafficking Enterprise.

11. GAL Defendant(s) all remained completely silent during these abuses, indicating their participation in the conspiracy's schemes to deprive the Claimant(s) of due process and fabricate pretenses to transfer custody despite overwhelming evidence of pervasive judicial misconduct and discrimination.

12. The transcript(s) of the Claimant(s)' hearings were similarly withheld and suppressed through the unlawful rejection of their forma pauperis request(s) in order to tamper with their chances at an appeal. All deprivations of substantive due process under color of law aimed at defrauding the Claimant(s) of their custodial rights through systematic exploitation of the compromised family courts.

13. Despite credible allegations and/or police reports of mental, physical, and/or sexual abuse of the Claimant(s) and their offspring, all reported to the Blue Code and Residential Trafficking Enterprise, these agencies not only neglected their duty but also actively engaged in covering up these crimes against children in furtherance of the FCCE.

**PREDICATE OFFENSES:** *Only requires the state to prove that members within that group committed a pattern of crimes.*

The related cases had similar outcomes and victims; unjustified parental alienation and/ or kidnapping, harsh financial penalties (aka extortion), all portrayed as "bonafide" services. While offering "bogus" services to their victims in these cases, the Attorney/ GAL Defendant(s) committed multiple predicate offenses including but not limited to;

a) Extortion;

b) Interstate commerce;

c) Arson;

d) Gambling (AKA: Death Wagers);

e) Manslaughter;

f) Kidnapping.

## XXIII.  The Family Annihilation Enterprise & FCCE Corruption

1. Extortion: The Defendant(s) have used threats, intimidation, and coercion to attempt to force the Claimant(s) to abandon their efforts to protect their offspring and to cease their whistleblowing activities.

2. Kidnapping: The Defendant(s) have unlawfully removed the Claimant(s) custody and have conspired to keep them away from their offspring, in violation of Claimant(s) parental authority and their offspring's own best interests.

3. Obstruction of Justice: The Defendant(s) have engaged in multiple acts of obstruction of justice, including witness tampering, evidence tampering, and the use of false and misleading statements to police and court officials to cover up their misconduct.

4. The specific acts of misconduct committed by each Defendant are described more fully in the counts set forth below.

5. As a direct and proximate result of the Defendant(s) unlawful and unethical conduct, the Claimant(s) have suffered severe emotional distress, financial harm, and the loss of their inalienable rights.

6. Therefore, the Claimant(s) bring this action to hold the Defendant(s) accountable for their misconduct, to vindicate their rights under federal law, and to obtain relief for the injuries they have suffered as a result of the Defendant(s) actions.

## XXIV.   PATTERN OF RACKETEERING ACTIVITY CONTINUED

1. Defendant(s) of the Family Annihilation Enterprise conspired to perpetrate a litany of racketeering acts including wire fraud, mail fraud, extortion, witness tampering, obstruction of justice, and trafficking of the Claimant(s)' offspring.

2. The Family Annihilation Enterprise induced court orders through fraud, fabricated evidence, and intentional misrepresentations via electronic communications to unlawfully obtain custody of the Claimant(s)' offspring despite credible abuse allegations against the Defendant(s).

3. The Family Annihilation Enterprise exploited fraudulent custody orders to physically and psychologically isolate the Claimant(s) from their offspring.

4. These predicate acts formed the core tactics of the Family Annihilation Enterprise to systematically destroy the parent-child relationship between the Claimant(s) and their offspring through criminal means once custody was corruptly obtained.

5. Defendant Judge(s) abused their judicial office to enable the Family Annihilation Enterprise schemes through a pattern of racketeering acts including obstruction of justice, witness intimidation, bribery, extortion, and willful endangerment of the minor offspring.

6. Attorney Defendant(s) stand accused of reprobate professional turpitudes and high crimes perpetrated under false colors of licensed bar admissions. For well beyond any recognized legal bounds, these Defendant(s) deliberately facilitated and enabled the FCCE's racketeering depredations targeting the Plaintiff(s) through their persistent

fraudulent billing schemes, scienter concealments of evidentiary disclosures imperiling the safety countless youth, overt spoliation of candors owed the tribunal, and depraved administrative conspiracies defrauding the sovereign Courts of their independence and Constitutional duties.

7.  Defendant Judge(s) violated 18 U.S.C. § 241 and 242 by depriving Claimant(s) of substantive due process rights under color of law through orders disregarding her abuse allegations to coerce the minor(s)' forced custody transfer against their will.

8.  Defendant Judge(s) engaged in extortion through threats of malicious prosecution and unlawful force to deprive the Claimant(s) of custody and property rights.

1.  Defendant GAL(s) breached duties and enabled child endangerment by failing to adequately investigate credible allegations that the minor offspring faced abuse and exploitation risks in the Defendant(s)' custody- willful blindness explicable only by their own entanglement in the trafficking scheme.

2.  Despite acknowledging the Claimant(s) reports of domestic violence against the Defendant(s), GAL Defendant(s) in this case cavalierly disregarded these red flags.

3.  The GAL Defendant(s) inaction allowed the conspiracy's trafficking operations to progress unchecked, perpetuating the enterprise's unlawful deprivation of the Claimant(s)' custodial authority while monetizing the minor offspring(s)' continued endangerment.

4.  Such aggressive misconduct underscored the GAL Defendant(s) abandonment of impartiality and willingness to pervert the evidentiary processes, through witness intimidation and evidence suppression, to deprive the minor offspring(s)' welfare interests and satisfy the FCCE conspiracy's custody objectives.

5. Attorney Defendant(s) engaged in an extensive pattern of criminal advocacy and fraud upon the courts through false representations, harassment, and malicious prosecution tactics to perpetuate the FCCE's custody deprivation schemes targeting the Claimant(s).

6. Attorney Defendant(s) initiated the custody litigation by filing demonstrably fraudulent paternity judgments and perjured motions that contained intentional misstatements designed to manufacture pretenses justifying the Claimant(s)' rights deprivations.

7. Such fraudulent filings transmitted via mail and wires constituted violations of 18 U.S.C. § 1341 and 1343 as predicate acts of racketeering undertaken to induce court rulings stripping custody from the Claimant(s) using deliberately falsified evidence.

8. At various hearings, Attorney Defendant(s) repeatedly violated 18 U.S.C. § 1503 by providing false testimony and representations to obstruct justice by deceiving tribunals in order to conceal the abuse allegations against the Defendant(s).

9. Attorney Defendant(s) perpetrated these frauds upon the court with CULPABLE awareness of the alienating parental tactics the Family Annihilation Enterprise deployed to systematically destroy the minor offspring(s)' parental relationships using psychological manipulation, brainwashing, and coercive isolation.

10. Through sustained harassment and vexatious pretrial conduct, Attorney Defendant(s) sought to undermine the Claimant(s)' financial standing and access to counsel to impose economic hardships obstructing due process - violating 18 U.S.C. § 1512 through a pattern of witness intimidation.

11. Attorney Defendant(s) dissuaded the Claimant(s) from disrupting the FCCE's corrupt custody evaluations by downplaying warning signs of abuse as routine, misadvising these

processes aligned with governing laws despite overwhelming evidence of the GAL Defendant(s)' fraudulent violations of ethical canons.

12. Calculated efforts to maintain the Claimant(s)' complacency through affirmative misrepresentations facilitated the FCCE's continued ability to monetize the unjust custody transfer and deprive Claimant(s)' of their substantive rights.

13. Law enforcement Defendant(s) abused their authority to retaliate against the Claimant(s) and protect the FCCE conspiracy through a pattern of harassment, false arrests, false arrests attempts, and deprivations of liberty without due process.

14. Defendant(s) initiated the Claimant(s)' malicious arrest and false imprisonment through an unlawful involuntary commitment order without probable cause, proper warrants, or constitutionally adequate notification of the purported "charges" - predicate acts of racketeering.

15. This retaliatory deprivation of the Claimant(s)' freedom aimed to impair the ability to advocate for their offspring(s)' interests and silence them as whistleblower(s), exposing the FCCE's systematic abuses through a pattern of intimidation and obstructive conduct proscribed by 18 U.S.C. § 1503 and 1512.

16. Law enforcement Defendant(s) willfully participated in unconstitutional enforcement practices designed to perpetuate the FCCE's operations through color of law rather than legitimate policing.

17. Such coercive tactics, predicated on knowingly fabricated pretexts, facilitated the FCCE's unlawful deprivation of the Claimant(s)' parental authority and the minor offspring(s)' liberty interests in violation of their substantive due process protections under color of law.

18. Blatantly disregarding exculpatory evidence of witness manipulation by The Family Annihilation Enterprise in this case, these officers elected to enforce custody directives through actual and threatened force constituting extortion under 18 U.S.C. § 1951 and the Hobbs Act.

19. By systematically applying coercion and ignoring evidence that would undermine the FCCE conspiracy's objectives, law enforcement Defendant(s) transformed from unbiased arbiters of justice into active perpetrators advancing the racketeering enterprise's criminal operations.

20. The bad-faith prosecutions designed to intimidate and harass the Claimant(s) through deprivations of liberty relied on intentional misstatements, prejudicial practices, and obstructive litigation tactics constituting additional predicates like mail fraud, obstruction of justice, and witness tampering.

21. These prosecutors systematically disregarded their constitutional duties and ethical obligations to administer fair proceedings, instead perpetuating abuse of legal process through malicious litigation solely to facilitate the FCCE's racketeering agenda.

22. Defendant(s) in the D.R.S department moved as active participants in the FCCE's operations, engaged in a litany of racketeering acts including mail fraud, wire fraud, witness tampering, and human trafficking under 18 U.S.C. § 1591.

23. The D.R.S. employees deliberately obstructed the Claimant(s)' fundamental parental authority by using dominating and abusive tactics during their limited visitation hours.

24. The Clerks named as Defendant(s) in this case tampered with, and refused to deliver, filings made by the Claimant(s); a clear obstruction of justice. The Clerk Defendant(s)

also committed mail fraud to hinder proceedings for the Claimant(s) and cause unnecessary delays.

25. Defendant GAL(s) convinced/ attempted to convince the Claimant(s) that only CASH payments should be made in the form of GAL fees, which were to be dropped off at their office(s) while they were not present to give the Claimant(s) a receipt of payment. These cash payments were never deducted from the amount owed and presumably pocketed.

26. Rather than investigate the crimes the Claimant(s) were reporting, or setting a evidentiary hearing, Defendant Judge(s) misrepresented that they recanted in their final judgment(s) despite their prior sworn testimony to the contrary - evincing bias and bad faith.

27. Defendant Judge(s) overtly demonstrated this prejudicial bias by ordering the Claimant(s) be silent during proceedings when speaking up about biased rulings. These Defendant Judge(s) even use clear intimidation tactics aimed at impugning the Claimant(s)' character to undermine opposition to the FCCE's deprivations.

28. These acts represented material breaches of a Judge(s)' duties, deprivations of due process and freedom of speech through witness tampering, and overt fraud on the court through intentional suppression of adverse evidence inculpating misconduct by FCCE affiliates like the Family Annihilation Enterprise.

29. Such willful concealment of child endangerment, coupled with Defendant Judge(s)' failure to remain impartial or properly monitor the minor offspring(s)' well-being despite credible signs of abuse, underscore her CULPABLE awareness that these illegal omissions perpetuated the FCCE's broader scheme to unlawfully deprive the Claimant(s) custodial authority through exploitation of compromised judicial machinery.

## XXVII.   WITNESS TAMPERING AND OBSTRUCTION RELATED TO COVID RESTRICTIONS

1. As part of their wider racketeering scheme, members of the FCCE also engaged in witness tampering, obstruction of justice, and deprivation of rights by exploiting fraudulent COVID-19 policies and restrictions to improperly exclude witnesses and impede the fact-finding process in legal proceedings.

2. Specific instances include: During the custody hearing(s) for the Claimant(s), Judge Defendant(s)  and court officers improperly invoked sham COVID policies to bar them from their own court hearings, obstructing their right to present evidence.

3. Attorney Defendant(s) assisted in excluding the Claimant(s) from web ex hearings, compelled by COVID rules, a clear pretextual ruse to undermine their case(s).

4. Law enforcement coordinated with the court to intimidate potential witnesses through threats of fines or arrest for purported COVID violations if they attempted to testify or be present for hearings.

5. The court's published COVID policies, used to justify the witness exclusions, which contained materially false information that had been certified through the Defendant(s)' fraudulent schemes described above.

6. By abusing COVID mandates in this manner, the Defendant(s) engaged in illegal witness tampering designed to dissuade and prevent the Claimant(s) and their witnesses from attending hearings and providing favorable testimony, in violation of 18 U.S.C. § 1512.

7. This deprivation of the Claimant(s)' right to attend their own hearing(s) and present witnesses to support their custody claim amounted to an obstruction of justice through the

corrupt persuading of witnesses and impeding official proceedings under 18 U.S.C. § 1503.

8. The pretextual use of COVID rules also deprived the Claimant(s) of due process and other constitutional rights protected against unjustified governmental interference.

9. These unlawful acts of witness tampering and obstruction perpetrated under the guise of fraudulent COVID policies constitute further racketeering activities engaged in by the FCCE in conducting its conspiratorial affairs through a pattern of such criminal acts.

## XXVIII.  SCHEME AND ARTIFICE TO DEFRAUD

1. Illegal Invocation of DVILS ORDERS: Abuse of Process: The Pit; The central tool of the FCCE is the widespread illegal exercise of the enormous equitable powers of state family law courts. Family courts exercise such powers putatively under a set of laws enacted to extend state police powers to "intervene" in intense domestic interpersonal conflict to address domestic violence. These laws are ensconced in O.C.G.A. § 19-13-1, O.C.G.A. § 19-13-3, and Title 16, Chapter 5 of the Official Code of Georgia Annotated (O.C.G.A.) These laws shall hereafter be referred to as the "DOMESTIC VIOLENCE INTERVENTION LEGISLATIVE SCHEME" or "DVILS".

2. Collectively, the DVILS create a set of practices and procedures whereby a party asserting that another within the family law litigation may quickly obtain an injunction imposing severe and onerous deprivations, restrictions, penalties, pains, and expense on another suspected of undesirable activity. Though committing "Abuse" can form the basis of highly invasive custody and liberty deprivations, it is vaguely defined and need not constitute a crime.

3. Upon overcoming the minimal procedural safeguard of "showing of good cause" for the existence of "abuse", a family court may grant an order imposing draconian "Personal Conduct," "Move Out," "Stay Away," "Property Control" and "Child Custody and Visitation" restrictions. (collectively "DVILS ORDERS").

4. The DVILS, DVILS ORDERS, and jeopardy of the "imposed disability" they represent will be referred to as "THE PIT."

5. Together, the DVILS and DVILS ORDERS constitute the central foundation of the FCCE's conspiracy to violate civil rights. By threatening, offering, or processing the (illegal) invocation of DVILS ORDERS, the Defendant(s) defraud family court litigants, perpetrating schemes and artifices to defraud, abuse of process, and deprivations of constitutional rights described herein.

6. Custody Evaluator Abuse of Process: Claimant(s) have identified a pattern of deception among FCCE custody evaluators and attorneys to avoid detection and oversight by refusing to obtain required authorization to operate as court-appointed agents. Without necessary paperwork, evaluators are susceptible to little or no judicial, professional, governmental, or parental oversight. This practice of unauthorized "Dark Appointment" creates an environment in which racketeering activity can exist "under the radar" of judicial officers, attorneys, and even unsuspecting family court litigants.

7. Perpetrating one or more of the schemes and artifice to defraud disclosed herein, evaluators defraud parents and their offspring of millions of dollars fraudulently claiming that they can determine the "best interests of the child" by scientific means. The claim is a demonstrable fraud.

8. The custody evaluator fraud generates tens of millions of dollars per year from families and youth. Based on FCCE operatives' misrepresentations, litigants are lulled into a false sense of security by the attorneys, judges, and other professionals who "cross-refer" one another and impose threats of severe repercussions for a litigant's failure to obey the professional referral.

9. Family law attorneys and judges participate in the scheme by recommending retaining professionals, failing to warn parents and their offspring of the dangers, expense, and jeopardy involved.

10. False Flag breach of Professional Duties: FCCE operatives regularly breach one or more of their professional duties of loyalty, zealous advocacy, fiduciary responsibility, and competence through "false flag" frauds to induce, deprive, or deceive family court litigants. These "False Flag" maneuvers involve misrepresentations to unsophisticated litigants, thereby depriving them of the benefits of legal services, and perpetrating fraud. "False Flag" schemes include:

11. Poser Advocacy: "Poser Advocacy" is the practice of what appears to be legitimate legal work to unsophisticated litigants. Attorneys engaging in poser advocacy acts to appeal to their client's emotions or untoward ends to generate fees with no beneficial legal work performed. Poser advocates write angry letters ("paperwads"), exchange worthless discovery, or repeatedly file baseless motions with no hope of success ("kite bombs"), to generate what looks like legitimate work to an unsophisticated litigant expecting daytime TV legal drama.

12. In a more sophisticated legal marketplace, poser advocacy is not tolerated as clients insist on legitimate practice and ethical standards. However, given the unique dynamics of

family law, FCCE members are able to pass off Poser Advocacy as real legal work. It is not.

13. Yet given the nature of the marketplace and the absence of litigant awareness of the fraud, there is little incentive to eradicate its existence. Because it is highly profitable, even if illegal, it is quietly encouraged. Because it can only exist where all players - the attorneys, "experts", and even judges - play along, it requires a "cabal" enterprise to succeed. Outsiders who offer legal, safe, and efficient services are market spoilers, and as such are illegally targeted as described herein.

14. In summary, by adapting the language and concepts from the original complaint while focusing on the specific allegations against the FCCE enterprise and its participants, these revised sections maintain the thrust of detailing how the enterprise weaponizes the family court system and exploits litigants through schemes like abusing domestic violence laws, fraudulent custody evaluations, and false flag tactics by compromised legal professionals. The vivid metaphors of "The Pit" and litigation maneuvers like "paper wads" and "kite bombs" are preserved to colorfully illustrate the enterprise's modus operandi.

## XXIX.  Duress and Undue Influence by Successive Illegal T.R.O. Orders

1. Until the present, the Claimant(s) have been denied by Defendant Judge(s), as part of a scheme to deprive them of their parental rights and retaliate against their whistleblowing activities.

2. On information and belief, the T.R.O. Order(s) against the Claimant(s) were obtained using falsified evidence, perjured testimony, and court misconduct, carried out by Judge/Attorney Defendant(s) and others acting in conspiracy.

3. The T.R.O. order(s) against the Claimant(s) placed unconstitutional restrictions on their rights of free speech, association, travel, due process, and other fundamental liberties under the United States and Missouri Constitutions, under threat of medical imprisonment and deprivation of their parental rights.

4. The Claimant(s) have remained under the cloud of these illegal T.R.O. order(s) through repeated instances of their extension and renewal by the Defendant(s) up to the present day. They will remain subject to the order's oppressive conditions indefinitely. As an intended result of the Defendant(s)' actions, the Claimant(s) have been placed in reasonable fear, intimidation, and duress, preventing them from fully exercising their rights to bring this action and others, thereby tolling any applicable statutes of limitations.

5. The events surrounding the procurement and perpetuation of the illegal T.R.O. order(s) against the Claimant(s) shall collectively be referred to as the ABUSE OF PROCESS CONSPIRACY.

6. By virtue of their affiliations, associations, and collaboration as alleged herein, the RICO Defendant(s) functioned collectively to facilitate and further the purposes of the RICO ENTERPRISE.

## XXX.  The Family Court Criminal Enterprise Continued

1. For purposes of the Claimant(s) RICO claims under 18 U.S.C. § 1962(c), the Family Court Criminal Enterprise constitutes an association-in-fact enterprise engaged in activities that affected interstate commerce, as defined in 18 U.S.C. § 1961(4).

2. The Family Court Criminal Enterprise is an association-in-fact of corrupt public officials, court officers, and private individuals who associated together for the common purpose of

engaging in unlawful conduct within the family court system through a pattern of racketeering activity.

3.  The Enterprise had an ongoing organizational structure, with each member performing roles to carry out the Enterprise's objectives through a pattern of racketeering activity.

4.  The Enterprise's common purposes include: a) Depriving parents and their offspring of their constitutional rights related to familial association, due process, and equal protection; b) Unlawfully separating offspring from protective parents through abuse of process, fabricated evidence, and fraud upon the courts; c) Obstructing justice and retaliating against whistleblowers who exposed corruption within the family court system; d) Enriching Enterprise members through extortion, bribery, and kickback schemes related to court-appointed services.

5.  The Enterprise operated primarily within the family courts, but its activities affected interstate commerce through use of interstate wires, facilities, and instrumentalities.

6.  The Enterprise conducted its affairs through a pattern of racketeering activity consisting of numerous indictable offenses chargeable under the federal statutes listed in 18 U.S.C. § 1961(1), including but not limited to a) Mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343; b) Obstruction of justice in violation of 18 U.S.C. § 1503; c) Tampering with witnesses and victims in violation of 18 U.S.C. § 1512; d) Deprivation of rights under color of law in violation of 18 U.S.C. § 242; e) Interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952; and f) Extortion and bribery offenses chargeable under state law.

## XXXI.  COUNT I: VIOLATION OF 18 U.S.C. § 1962(c)

1)  The Defendant(s) conspired to engage in racketeering activity, contravening § 1962(a),

(b), and (c) of the RICO Act. This conspiracy entailed an agreement among the Defendant(s) to conduct or participate in the affairs of the racketeering enterprise through a pattern of racketeering activity.

2) As a victim of this racketeering conspiracy, the Claimant(s) have suffered direct harm stemming from the Defendant(s)' unlawful agreement and concerted actions. This section of the RICO Act explicitly prohibits individuals from conspiring to violate any of the provisions of § 1962(a), (b), or (c). The Defendant(s)' agreement and coordinated actions to engage in racketeering activity thus constitute a violation of § 1962(d).

3) The Defendant(s) formed an agreement to conduct or participate in the affairs of the racketeering enterprise through a pattern of racketeering activity, demonstrated by their coordinated actions and shared objectives. The Claimant(s) sustained harm as a result of the Defendant(s)' conspiracy, which facilitated the commission of racketeering acts and exacerbated the injuries endured by the Claimant(s).

4) Furthermore, the Defendant(s) are alleged to have conducted and participated in the affairs of the Family Court Enterprise through a pattern of racketeering activity, causing injury to the Claimant(s)' business and property. This underscores the severity and breadth of the Defendant(s)' racketeering conspiracy and its detrimental impact on the Claimant(s).

## XXXII.  COUNT II:  VIOLATION OF 18 U.S.C. § 1962(a) AND

## RETALIATION AGAINST WHISTLEBLOWER(S) (18 U.S.C. § 1962(c) and (d))

1) This count pertains to the Defendant(s) using and investing income derived from a pattern of racketeering activity in the operation of the Family Court Enterprise, resulting

in injury to the Claimant(s)' business and property.

2) Retaliation Against Whistleblower (18 U.S.C. § 1962(c) and (d)): This count is brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., against the Defendant(s) named herein for their participation in a pattern of racketeering activity involving retaliation against whistleblower(s).

3) Throughout the relevant period, the Defendant(s) were employed by or associated with the enterprises described in this Claim, which were engaged in activities affecting interstate commerce.

4) The Defendant(s) conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

5) Additionally, the Defendant(s) conspired with each other and with other members of the enterprises to engage in the pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

6) Predicate Acts: The Defendant(s) in this case engaged in the following predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), in furtherance of the scheme to retaliate against the Claimant(s) for their whistleblowing activities.

7) Bribery (18 U.S.C. § 201): The judicial Defendant(s) solicited and accepted bribes and kickbacks from other members of the enterprise to issue court orders and take actions adverse to the Claimant(s) in retaliation for their claims.

8) Extortion (18 U.S.C. § 1951): The Defendant(s) obtained the Claimant(s)' property, including their legal rights and entitlement to access the courts, through wrongful use of fear, threats, and intimidation under color of official right.

9)  Wire Fraud (18 U.S.C. § 1343): The Defendant(s) transmitted false and misleading statements and court filings by means of wire communication in interstate commerce to further their scheme to retaliate against the Claimant(s) and their offspring.

10) Obstruction of Justice (18 U.S.C. § 1503): The Defendant(s) corruptly influenced, obstructed, and impeded the due administration of justice in state and federal courts to shield their retaliatory actions from judicial scrutiny.

11) Witness Tampering (18 U.S.C. § 1512): The Defendant(s) used intimidation, threats, and corrupt persuasion to hinder, delay, and prevent the Claimant(s) from testifying freely and fully about their misconduct.

12) Pattern of Racketeering Activity: The predicate acts of racketeering activity committed by the Defendant(s) had the same or similar purposes, results, participants, victims, and methods of commission. The acts were interrelated by distinguishing characteristics and were not isolated events.

13) The predicate acts were committed with the specific intent to retaliate against the Claimant(s) for their whistleblowing activities and their exercise of protected constitutional rights. The Defendant(s) acted with malice, intent to injure, and reckless disregard for the Claimant(s)' rights.

14) Injury to Business or Property: As a direct and proximate result of the Defendant(s) pattern of racketeering activity and RICO violations, the Claimant(s) suffered injury to their business and property.

15) This includes legal expenses incurred to defend against retaliatory medical contempt proceedings and court orders.

16) Loss of income and business opportunities due to the Defendant(s) interference with their

ability to access the courts and pursue legal remedies.

17) Deprivation of their property interest in the care, custody, and management of their offspring's affairs.

18) Therefore, the Claimant(s) are entitled to recover treble damages for these losses, together with attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

19) WHEREFORE, the Claimant(s), requests that the Court enter judgment in their favor and against the named Defendant(s), awarding: Treble damages pursuant to 18 U.S.C. § 1964(c); Attorney's fees and costs pursuant to 18 U.S.C. § 1964(c); Injunctive relief enjoining the Defendant(s) from further acts of racketeering and retaliation; An order divesting the Defendant(s) of any interest, direct or indirect, in the enterprises described herein; Such other and further relief as the Court deems just and proper.

## XXXIII. COUNT III: VIOLATION OF 18 U.S.C. § 1962(b)

1) This count alleges that the Defendant(s) acquired and maintained an interest in and control of the Family Court Enterprise through a pattern of racketeering activity, causing injury to the Claimant(s)' business and property.

## XXXIV.  COUNT IV: VIOLATION OF SACROSANCT RIGHTS

### *Violation of 42 U.S.C. § 1983 and Mo. Const. art. I, § 2, 10, 14*

1) This count alleges a violation of Claimant(s)' sacrosanct rights under 42 U.S.C. § 1983. The named Defendant(s) in this case, acting as law enforcement officers, employed by the state, infringed upon the Claimant(s)' fundamental rights.

2) Factual Allegations: The Defendant(s), acting together and without legal justification,

unlawfully arrested and detained the Claimant(s), depriving them of their liberties.

3) These actions were retaliatory, aimed at suppressing the Claimant(s)' whistleblowing activities and their exercise of constitutional rights to free speech, petition, and association.

4) The Defendant(s)' actions were intentional, reckless, and malicious, demonstrating deliberate indifference to the Claimant(s)' sacrosanct rights.

5) Therefore, the Claimant(s) suffered severe emotional distress, physical harm, loss of liberty, and damage to familial relationships as a direct result of the Defendant(s)' violations.

## XXXV.  RICO § 1961(5) PATTERN OF RACKETEERING ACTIVITY ALLEGATIONS

### COMMISSION OF RICO §1961(1)(B) RACKETEERING ACTIVITY

1) The Defendant(s) engaged in a pattern of racketeering activity over the past decade, including fraud, mail fraud, wire fraud, bank fraud, child trafficking, and obstruction of proceedings before departments and agencies, violating various federal laws.

2) Defendant Judge(s) are implicated in judicial misconduct and active participation in racketeering activities within the family court system, colluding with attorneys in the trafficking of the Claimant(s)' minor offspring.

### XXXVI. UNLAWFUL ARREST AND FALSE IMPRISONMENT

1) The Defendant(s), acting under color of law, unlawfully arrested, detained, and/ or held the Claimant(s) in contempt of court, without a valid warrant, probable cause, or lawful justification.

2) These arrest(s) were part of a larger pattern of racketeering activity under RICO, demonstrating a clear violation of RICO's prohibitions.

3) The true motivation behind the Claimant(s)' arrest(s) were retaliation for their criticism of the Defendant(s)' corruption and misconduct in the family court system.

4) Relief Sought: the Claimant(s) seek compensatory and punitive damages, injunctive relief, and any other appropriate relief to hold the Defendant(s) accountable and vindicate their rights.

## XXXVII.  COUNT V: ABUSE OF PROCESS AND CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

1) This count alleges that Defendant(s) abused the legal process to unlawfully remove the Claimant(s)' offspring from their custody with the state being liable for its employees' actions.

2) Factual Allegations: The Defendant(s) misused and abused the legal process to achieve an improper result, namely the unlawful removal of the Claimant(s)' offspring from their custody, engaging in extortion and unconstitutional deprivation of parental rights under color of law (18 U.S.C. §§ 1951, 242).

3) Defendant(s) in the Residential Trafficking Enterprise and and its representatives in the Psycho Fraud Enterprise obstructed the Claimant(s)' lawful rights as parent's to access information about the minor offspring(s)' treatment and progress, engaging in a pattern of deception and misuse of HIPAA privacy laws to perpetuate the alienation scheme (18 U.S.C. § 1503).

4) The Defendant(s) abuse of process had an ulterior motive, aiming to gain an advantage in

custody proceedings and retaliate against the Claimant(s) for exposing corruption within the family court system.

5) The state is therefore accountable for its employees' actions, including Defendant Judge(s) who committed abuse of process under state law.

6) This abuse of process violated the Claimant(s)' constitutional rights, including their right to due process and familial association, pursuant to 42 U.S.C. § 1983.

7) The Defendant(s) conspired to deprive the Claimant of their constitutional rights through coordinated efforts to abuse the legal process, contravening 42 U.S.C. § 1985(3).

8) The Claimant(s) suffered damages as a direct result of the Defendant(s) abuse of process, conspiracy to deprive constitutional rights, and violations of 42 U.S.C. §§ 1983 and 1985(3).

## XXXVIII.  COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1) This count asserts that the Defendant(s) engaged in extreme and outrageous conduct, causing severe emotional distress to the Claimant(s) by manipulating the legal process and unlawfully separating them from their offspring.

2) Factual Allegations: The Defendant(s)' conduct, including false accusations and unlawful separation, aimed to cause severe emotional distress to the Claimant(s) with reckless disregard for the probability of causing such distress.

3) The Claimant(s) suffered severe emotional distress, including anxiety, depression, and trauma, directly resulting from the Defendant(s)' extreme and outrageous conduct.

## XXXIX.  COUNT VII: CIVIL CONSPIRACY

1) This count alleges that the Defendant(s) and other unknown co-conspirators conspired to deprive the Claimant(s) of their constitutional rights and committed unlawful acts against them.

2) Factual Allegations: The Defendant(s) conspired to engage in unlawful conduct, including abuse of process, intentional infliction of emotional distress, and deprivation of constitutional rights, through overt acts such as filing false pleadings and making misrepresentations to the court.

3) The Claimant(s) suffered damages, including emotional distress, financial harm, and loss of constitutional rights, as a direct result of the Defendant(s)' civil conspiracy.

## XL.  COUNT VIII: Violation of 18 U.S.C. § 1962(d)

This claim meticulously outlines the sequence of events in the custody proceedings, showcasing instances of alleged misconduct by various Defendant(s), including judges, attorneys, guardians ad litem, and law enforcement officers. The RICO counts posit that these Defendant(s) participated in a criminal enterprise aimed at manipulating family court outcomes for personal gain, violating multiple RICO provisions and inflicting harm on the Claimant(s) and their offspring.

1) The Claimant(s) arrest and/ or medical detention was unlawful and retaliatory. This action breaches the Fourth Amendment, which guards against unreasonable searches and seizures, such as warrantless arrests. As per Payton v. New York, 445 U.S. 573 (1980), absent exigent circumstances, police cannot enter a residence for a warrantless arrest.

That being said, the Blue Code Enterprise(s) lacked warrant, violating their Fourth Amendment rights.

2) Additionally, the retaliatory nature of the arrest infringes upon the First Amendment's freedom of speech. According to Hartman v. Moore, 547 U.S. 250 (2006), a First Amendment retaliatory prosecution claim can succeed if the Defendant(s) conduct was motivated by retaliation.

3) The Claimant(s) were then deprived of due process and legal representation, breaching the Sixth Amendment's guarantee of legal representation, as established in Gideon v. Wainwright, 372 U.S. 335 (1963). The Claimant(s) faced medical, criminal, and/ or contempt proceedings without proper legal representation, a blatant violation of their Sixth Amendment rights.

4) The removal of the Claimant(s)' offspring was illegitimate and premeditated, violating their Fourteenth Amendment rights safeguarding parents' decisions regarding their youth, as articulated in Troxel v. Granville, 530 U.S. 57 (2000).

5) The medical misconduct in the Claimant(s)' case necessitates a comprehensive investigation, as it contravenes the due process clause of the Fourteenth Amendment. As per Brady v. Maryland, 373 U.S. 83 (1963), suppression of evidence favorable to the accused constitutes prosecutorial misconduct, warranting investigation.

6) The activities of the Federal Clerk of Courts Operations Corporation violate numerous Securities Laws provisions and fall under the regulatory purview of the Securities and Exchange Commission, as established in SEC v. W.J. Howey Co., 328 U.S. 293 (1946).

7) The fraudulent activities of government officials in family law violate various laws, including the Deceptive Trade Business Practices Act and Executive Orders 13903 and

13844. These actions have resulted in the unjust separation of families.

8) The submission calls for an investigation under Executive Order 13903 due to widespread cheating affecting numerous parents, children, and taxpayers, both domestically and internationally. This request aligns with the executive branch's authority to investigate and prosecute federal law violations, as confirmed in United States v. Nixon, 418 U.S. 683 (1974).

9) The Claimant(s) allege that each Defendant, acting under color of law, has violated their constitutional rights, including freedom from unreasonable searches and seizures and excessive force, protected by 42 U.S.C. § 1983.

10) Furthermore, the Claimant(s) also allege that each Defendant(s), acting under color of law, intentionally, recklessly, and maliciously violated these rights, causing physical and emotional injury, pain and suffering, humiliation, mental distress, and other damages.

11) In addition, the Claimant(s) assert that each Defendant(s) conducted themselves with fraud, oppression, or malice, justifying exemplary or punitive damages.

12) Furthermore, the Claimant(s) contend that each Defendant, acting under the color of law, exceeded their jurisdiction or acted in complete absence of jurisdiction, resulting in injury in violation of the Claimant(s)' rights, privileges, and immunities. This constitutes a claim for trespass under color of law for acts performed outside the scope of jurisdiction by each Defendant.

13) *Wherefore,* the Claimant(s), seek an in-camera inspection of the sealed record in this case and other similar cases, pursuant to 18 U.S.C. § 3332 and the Sarbanes-Oxley Act. Such inspection is crucial to verify the allegations of abuse of process, misuse of practice, and misappropriation of federal fund incentive programs, including Title IV-D child support

enforcement (CSE) and Title IV-E & VAWA.

14) The Claimant(s) allege that the Defendant(s), have acted unlawfully and violated the U.S. Constitution. Specifically, the Claimant(s) allege violations of federal regulations under Title IV-D and Title IV-E related to Child Support Enforcement and Child Protective Services, respectively.

15) Additionally, the Claimant(s) assert that the appointment of Guardians Ad Litem (GAL) for the Claimant(s)' offspring without the appointment of any attorney ad litem for the Claimant(s), as mandated by Turner v. Rogers (2011), constitutes a violation of the Claimant(s)' rights.

16) The Claimant(s) contend that the Defendant(s) used corporate defacto alter-ego/veil to evade responsibility, contravening various laws such as the Social Security Act of 1935, Clayton Act, Hobbs, Sherman Antitrust, GRICO, and Sarbanes-Oxley Acts.

17) The Claimant(s) assert that the federal court has supplemental jurisdiction and authority under 28 USC § 1391 to hold the Defendant(s) accountable for their actions. The Erie Doctrine necessitates federal courts to apply state substantive law and federal procedural law in cases lacking applicable federal law or constitutional issues (Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)).

18) The Claimant(s) request a Grand Jury investigation based on an inspection of the record, citing several federal rules, including Title III, Rule 6(a)(1). The Claimant(s) allege that all officials involved in this case have committed misprision of felony and usury, including Defendant Judge(s), who instructed the Deputy Clerk not to file related documents.

19) In conclusion, the Claimant(s) seek an in-camera inspection of the sealed record in this

case and other similar cases, aiming to verify the allegations of abuse of process, misuse of practice, and misappropriation of various federal fund incentive programs. If substantiated, the records should be turned over to appropriate law enforcement authorities for further investigation.

20) Moreover, the Defendant(s)' actions violated numerous federal statutes, including 18 U.S.C. § 2 (holding principals liable for agents' actions), 18 U.S.C. § 3 (punishing accessories after the fact), 18 U.S.C. § 241 and 18 U.S.C. § 242 (protecting against conspiracies to infringe rights and deprivation of rights under color of law), 18 U.S.C. § 371 (prohibiting conspiracies to commit offenses against the United States), 18 U.S.C. § 403 (protecting the privacy of child victims and witnesses), 18 U.S.C. § 514 (prohibiting the creation of fictitious obligations), 18 U.S.C. § 641 (prohibiting theft of public money, property, or records), and 18 U.S.C. § 666 (prohibiting theft or bribery concerning programs receiving federal funds).

21) The Claimant(s) respectfully request this Court to enter judgment in their favor, awarding substantial compensatory and punitive damages, as well as attorney's fees and costs. Additionally, the Claimant(s) request an investigation into the Defendant(s)' actions to prevent future violations.

## L.   REMEDIATION

1) After the Holocaust, the issue of reparations for Jewish survivors became a crucial aspect of post-war negotiations. Recognizing the immense suffering endured by the Jewish people during the Holocaust, various countries and organizations took steps to provide financial compensation for the victims. One of the most significant initiatives was the Luxembourg Agreement of 1952, in which West Germany agreed to pay reparations to

Jewish individuals who had suffered under Nazi persecution. These reparations aimed to acknowledge the atrocities committed and to provide some measure of restitution for the loss of property, livelihoods, and, most importantly, human dignity. Over the years, the scope of reparations expanded to include additional compensation programs and social welfare measures, ensuring that survivors and their families received support in their later years. While reparations could never fully heal the wounds of the Holocaust, they represented a significant acknowledgment of the injustice inflicted upon the Jewish people and provided a form of material redress for their suffering.

2) Similar to the Luxembourg Agreement, the Claimant(s) are requesting this honorable court establish a framework for compensating victims of child trafficking which will involve acknowledging the emotional, financial, and physical toll inflicted upon them as well as support services to aid in healing and rebuilding the victim's lives.

3) The Claimant(s) seek life-long financial restitution for the egregious genocide inflicted upon innocent individuals by the Defendant(s), stemming from their abuse of discretion and deliberate procedural errors. These actions have tragically led to the forced removal and human trafficking of countless youths, perpetuating a cycle of trauma and injustice. It is imperative that the court recognizes the severity of these violations and provides comprehensive support to those affected, ensuring not only financial compensation but also long-term assistance and resources for healing and rebuilding shattered lives.

4) WHEREFORE, *We the People* humbly request a Lawful Order and Judgment effectuating:

a. Cease & Desist;

b. Return of our Family;

c.  Formal Nullification of the already Void Codes including but not limited to those described in this Claim;

d.   Formal Vacating the already void "Consent to Crimes Decrees" in the ruse of "court orders;"

e.  A Temporary Restraining Order Without Notice be issued against all Defendant(s) in order to protect the Claimant(s) and their offspring from further irreparable harm (18 U.S.C. § 1514 (B)).

f.  Disbanding the Child & Human Trafficking Tribunals falsely portrayed as "courts."

g.  Massive Reparations & Return of our Pillaged Property, just as done by Germany. A Sum in Excess of $500,000,000,000,000 (Five Hundred Trillion Dollars) shall be funded.

h.  *We the People* hereby hold the Defendant(s), Supreme Judicial Imposter(s) and all Government Imposter(s) accountable for their heightened criminal liability and civil damages.

i.  *We the People* humbly request that all Defendant(s) and Supreme Judicial Imposter(s), falsely portrayed as "Supreme Court Justices," are to be federally indicted for kidnapping and human trafficking under R.I.C.O.'s expansive powers.

The Claimant(s) are confident that this case will set a precedent and expose widespread corruption and abuse of power in this state's legal system. *We the People* are committed to seeking justice for ourselves and others harmed by similar actions, urging the Court to take swift action to hold the Defendant(s) accountable and protect the sovereign rights of all *living souls.*

Respectfully Submitted,

/s/ *Michelle- Marryann: Dickerson*

UD1-207 Without Prejudice

Michelle- Marryann: Dickerson,

*An Enfranchised Living Soul,*

and

/s/ *Alexandra- M: Dean*

UD1-207 Without Prejudice

Alexandra- M: Dean,

*An Enfranchised Living Soul.*

and

/s/ *Brooke- J: Marr*

UD1-207 Without Prejudice

Brooke: J- Marr,

*An Enfranchised Living Soul.*

and

/s/ *Justin- E: Shire*

UD1-207 Without Prejudice

Justin: E: Shire,

*An Enfranchised Living Soul.*

and

/s/ *Ryan- N: Brown*

UD1-207 Without Prejudice

Ryan- N: Brown,

*An Enfranchised Living Soul.*

and

/s/ *Ariel- Alton*

UD1-207 Without Prejudice

Ariel- Alton,

*An Enfranchised Living Soul.*

and

/s/ *Whitney- Thompson*

UD1-207 Without Prejudice

Whitney- Thompson,

*An Enfranchised Living Soul,*

and

s/ *James-Mertens*

UD1-207 Without Prejudice

James- Mertens,

*An Enfranchised Living Soul,*

CERTIFICATE OF SERVICE: We hereby certify that on the 4th day of October, 2024, a true and exact copy of the foregoing was served via email to all parties of record. /s/ Alexandra- M: Dean, UD1-207 Without Prejudice, conscioussparrow1719@gmail.com. /s/ Brooke- J: Marr, UD1-207 Without Prejudice, Brookesigala@gmail.com. /s/ Justin- E: Shire, UD1-207 Without Prejudice, justin.shire@gmail.com. /s/ Ryan- N: Brown, UD1- 207 Without Prejudice, emailaddressforsale@gmail.com. /s/ Ariel- Alton, UD1- 207 Without Prejudice, alton.ariel@yahoo.com. /s/ Michelle- Marryann: Dickerson, UD1-207 Without Prejudice, michelled738@gmail.com. /s/ Whitney- Thompson, UD1-207 Without Prejudice, redford175@gmail.com. /s/ James- Mertens, UD1-207 Without Prejudice, jwm1131@gmail.com

1. MOED_SRL_Filings@moed.uscourts.gov

2.  lstobie@mlklaw.com

3.  laura@stobiefamilylawgroup.com

4.  MEDIA@slmpd.org

5.  acarnal@crawfordcountyso.org

6.  tschilli@richmondheights.org

7.  stlouis@fbi.gov

8.  spdclerk@sullivan.mo.us

9.  John.Lasater@courts.mo.gov

10. Megan.julian@courts.mo.gov

11. kelly.landre-wright@courts.mo.gov

12. olainki-spraggins@courts.mo.gov

13. Jackiegonzlawyer@outlook.com

14. jackie@ponderbatesstewartgonzlaw.com

15. lewandowski.beth@gmail.com

16. john@rhflegal.com

17. JAMatreci@lsem.org

18. millarlawfirm@gmail.com

19. brianawilliams0815@gmail.com

20. brentonwilliams2296@gmail.com

21. jfendelman@fptlaw.com

22. george@georgetillman.com

23. kellychevalier64@email.com

24. justindwach@gmail.com

25. william@ambientoutdoorlighting.com

26. closerdocs@yahoo.com

27. elliott@coultergoldberger.com

28. dkwhittle@icloud.com

29. tkorte07@yahoo.com

30. SRemis@GHC-Law.com

31. mdavidson@laduelaw.com

32. cdnewborn@sbcglobal.net

33. VENUSESQUIRE@VENUSESQUIRE.COM

34. ruth.owsley@msn.com

35. armandwilson83@yahoo.com

36. cristaberacha@me.com

37. EDCLERK@courts.mo.gov

38. 21mypleadings@courts.mo.gov

39. moapped@courts.mo.gov

40. bradley@bodeuxlawgroup.com

41. Kelly.R.Ploesser@dss.mo.gov

42. Mathews@dss.mo.gov

43. Cynthia@tcaflaw.com

44. jenna@jennaconleylaw.com

45. Robert.Heggie@courts.mo.gov

46. mburgoyne@ballwin.mo.us

47. bob@rhflegal.com

48. Jeffrey.Medler@courts.mo.gov

49. Jason.Dodson@courts.mo.gov

50. MaryElizabeth.Ott@courts.mo.gov

